**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAM ROSENTHAL, ISKANDER KHAN, and LUIGI CIAVOLINO JR., on behalf of themselves and all others similarly situated,<br><br>and<br><br>SEAN BASINSKI, individually,<br><br>Plaintiffs,<br>v.<br><br>GUSTAVINO'S INC.; ROSE GROUP PARK AVENUE LLC; BRIDGEMARKET ASSOCIATES, L.P.; MADDD 550 BROAD LLC; THE CITY OF NEW YORK; NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION; LOUIS ROSE; NYPD LIEUTENANT ANYTHONY TAI (TAX #953465); NYPD OFFICER REBENIAS CANAS (TAX #976507); NYPD OFFICER DYSMAIRY GUZMAN (TAX #958478); and JOHN DOE #1<br><br>Defendants. | Case No. 1:26-CV-07715-JAV-RFT<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRIDGEMARKET ASSOCIATES, L.P.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

MINTZ & GOLD LLP
600 Third Avenue, 25th Floor
New York, New York 10016
(212) 696-4848 (tel)
(212) 696-1231 (fax)
kennedy@mintzandgold.com
*Attorney for Defendant*
*Bridgemarket Associates, L.P.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

A. Parties ........ 3

B. BA's Assignment of the Ground Lease to MADDD ........ 3

C. The Alleged Acts of Wrongdoing by Defendants ........ 4

D. Procedural History ........ 5

ARGUMENT ........ 6

I. THE COMPLAINT DOES NOT STATE ANY VALID CLAIM AGAINST BA BECAUSE IT PREDICATES BA'S LIABILITY ON ACTS OCCURING AFTER THE ASSIGNMENT ........ 6

II. INDEPENDENTLY, EACH OF THE CAUSES OF ACTION DIRECTED AT BA, IS TIME BARRED ........ 9

A. Declaratory Judgment (First Cause of Action) ........ 9

B. Public Nuisance (Second Cause) ........ 10

C. Unjust Enrichment (Third Cause) ........ 11

D. Private Actor Under 42 U.S.C. § 1983 (Sixth Cause) ........ 13

E. Other Causes of Action ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6, 7

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ........ 8

*Bascunan v. Elsaca*,
2021 WL 3540315 (S.D.N.Y. Aug. 11, 2021) ........ 11, 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 7

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........ 6

*City of New York v. Coll. Point Sports Ass'n, Inc.*,
61 A.D.3d 33 (2d Dep't 2009) ........ 10

*Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847 (2d Cir. 1995) ........ 8

*Kavazanjian v. Rice*, No. 03-CV-1923 (FB) (SMG),
2008 WL 5340988 (E.D.N.Y. Dec. 22, 2008) ........ 15

*Lia v. Saporito*,
541 F. App'x 71 (2d Cir. 2013) ........ 12

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ........ 8

*Nike, Inc. v. Already, LLC*,
663 F.3d 89 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) ........ 9

*Owens v. Okure*,
488 U.S. 235 (1989) ........ 13

*Pintilie v. Town of E. Hampton*,
258 N.Y.S.3d 489 (Sup. Ct. 2026) ........ 10, 11

*Plusgrade L.P. v. Endava Inc.*, No. 1:21-CV-1530 (MKV),
2023 WL 2402879 (S.D.N.Y. Mar. 8, 2023) ........ 7

*Porwick v. Fortis Benefits Ins. Co.*, No. 99 CV 10122 (GBD),
2004 WL 2793186 (S.D.N.Y. Dec. 6, 2004) ........ 9

*Ruane v. Cnty. of Suffolk*,
923 F. Supp. 2d 454 (E.D.N.Y. 2013) ........ 13, 14

*Shak v. JPMorgan Chase & Co.*,
156 F. Supp. 3d 462 (S.D.N.Y. 2016) ........ 9

*Sporn v. MCA Recs., Inc.*,
58 N.Y.2d 482 (1983)........ 15

*Stein v. Garfield Regency Condo.*,
65 A.D.3d 1126 (2d Dep't 2009) ........ 9

*Wallace v. Kato*,
549 U.S. 384 (2007)........ 13

*Yong Wen Mo v. Gee Ming Chan*,
17 A.D.3d 356 (2d Dep't 2005) ........ 15

**Statutes** **Page(s)**

28 U.S.C. §§ 2201–2202........ 8

42 U.S.C. § 1983........ 2

N.Y. C.P.L.R. 214........ *passim*

N.Y. C.P.L.R. 215........ 15

**Rules** **Page(s)**

Fed. R. Civ. P. 8........ *passim*

Fed. R. Civ. P. 12(b)(6) ........ *passim*

Fed. R. Civ. P. 56........ 6

Fed. R. Evid. 201 ........ 6

Defendant Bridgemarket Associates L.P. ("**BA**") submits this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint (the "**Complaint**") of Plaintiffs Sam Rosenthal ("**Rosenthal**"), Iskander Khan ("**Khan**"), Luigi Ciavolino Jr. ("**Ciavolino**"), and Sean Basinski ("**Basinksi**"), with prejudice, pursuant to Fed. R. Civ. P. 8 and 12(b)(6) for failure to state a plausible claim for relief.

## Preliminary Statement

The one thing that is clear from plaintiffs' lengthy and often conclusory allegations in this multiparty class and individual action is that defendant BA is not a proper party to this action. Plaintiffs' theory of liability is solely predicated on BA's former status as the Ground Lessee for certain property owned by the City of New York and located beneath the Queensboro Bridge. The Complaint is primarily directed at acts undertaken by retailers and venue operators, who directly or through the acts of their security personnel, denied plaintiffs access "since the summer of 2020" to an area designated to be a public plaza (the "**Plaza**"). NYSCEF No. 24 ¶ 54. However, the Complaint expressly acknowledges BA's sale and assignment of the Ground Lease to MADDD 550 Broad LLC ("**MADDD**") "in 2020." *Id.* ¶ 54. The Complaint then alleges wrongdoing by "whichever company held the ground lease with the City at the time". *Id.* That Company is MADDD, not BA.

The public record establishes that BA sold and assigned all its rights, title and interest in the Ground Lease to MADDD, on May 12, 2020. Taking judicial notice of the date of sale, publicly recorded with the New York City Department of Finance (*see* Declaration of James W. Kennedy, dated November 13, 2026 ["**Kennedy Decl**."] Ex. 1), BA was not the Ground Lessee when the acts of interference allegedly began in the "summer of 2020," and it has no ongoing interest in the property. *Id.* Because the Complaint bases BA's liability on its purported role as former Ground

Lessee, and because the Complaint is predicated on acts occurring after BA assigned the Ground Lease to MADDD on May 12, 2020, the Complaint does not state any plausible claim for relief against BA, whatsoever.

Further, under Rule 8 of the Federal Rules of Civil Procedure and Supreme Court authority, plaintiffs cannot overcome this central defect in their pleading merely by labeling BA as one of four supposed "Corporate Defendants", along with MADDD and two retailers/venue operators, Gustavino's Inc. and Rose Group Park Avenue LLC. Plaintiffs have not given BA fair notice of any factual basis for BA's alleged liability (beyond its status as former Ground Lessee) by impermissibly lumping BA into a group of undifferentiated corporate defendants. Nor is there any current justiciable controversy **between plaintiffs and BA** supporting a declaratory judgment (First Cause of Action) "with respect to the legal status and public accessibility of the Plaza" (Dkt. No. 24 ¶ 71), because BA did not use, occupy or have any interest in the Plaza since May 12, 2020. BA simply has no legal interest in this dispute.

As a separate and independent ground for dismissal, to the extent the Complaint purports to render BA liable based upon BA's status as Ground Lessee prior to May 12, 2020, all causes of action are barred by the applicable New York statute of limitations. To the extent plaintiffs seek to rest their Second Cause of Action, for "public nuisance," upon BA's status (or even its conduct) as Ground Lessee in the early or mid-2000s, the cause of action is time-barred under New York's applicable three-year statute of limitations. *See* N.Y.C.P.L.R. § 214(4). Similarly, plaintiffs' Third Cause of Action, alleging a theory of "unjust enrichment," is barred by New York's three-year statute of limitations as plaintiffs are seeking monetary relief. So, too, is Plaintiffs' Sixth Cause of Action, for personal injury under 42 U.S.C. § 1983. To the extent the Complaint could conceivably be read to allege trespass to chattels (Seventh Cause) or assault and battery (Eighth Cause) by BA

while it held the Ground Lease (it cannot), those claims would likewise be barred by New York's three-year and one-year statute of limitations.

## Statement of Facts

Solely for purposes of this motion, BA accepts as true only the well-pled allegations of the Complaint, which excludes those allegations that are contradicted by the public record or are so vague or conclusory as to violate Rule 8 of the Federal Rules of Civil Procedure.

### A. Parties

This action arises from the alleged exclusion of members of the public from the Plaza. Dkt. No. 24 ¶ 18. Plaintiffs are four people who were allegedly excluded from the Plaza, one of whom (Basinksi) further alleges he was physically removed and arrested. Dkt. No. 24 ¶ 21. They sue eleven defendants, including the venue operators, the current and former leaseholders of the building, the City of New York and its agencies, and several NYPD officers. *Id.* ¶¶ 1-15.

### B. BA's Assignment of the Ground Lease to MADDD

On May 12, 2020, BA "irrevocably assign[ed], transfer[red], set[ ] over and convey[ed]" all its rights, title, and interest in the Ground Lease to MADDD. *See* Kennedy Decl. Ex. 1 at 2. The Assignment, conveying the entire leasehold to MADDD, was formally recorded, on May 15, 2020, with the New York City Department of Finance and can be found using the Automated City Register Information System website ("**ACRIS**"). Kennedy Decl. ¶ 3-4 and Ex. 1. The currently operative 2025 lease, also available via ACRIS, identifies MADDD as the tenant and "successor-in-interest" to BA, reciting the May 12, 2020, sale and assignment. Kennedy Decl. Ex. 2, at 4-5 (the Third Amended and Restated Lease).

### C. The Alleged Acts of Wrongdoing by Defendants

The operative allegations of the Complaint occurred after BA no longer held any interest in or title to the property, including the Plaza. Indeed, the sole allegation of any alleged interaction between BA and any of plaintiffs is that Basinski was "told" he could not exercise at the Plaza by an employee of "whichever company held the ground lease with the City at the time", in the "summer of 2020." Dkt. No. 24 *id.* ¶ 54. Since the Assignment occurred before then, on May 12, 2020, that allegation is necessarily directed at MADDD. *See* Kennedy Decl. Ex. 1.

Rather than alleging any specific act of interference by BA, the Complaint lumps BA into the definition of "Corporate Defendants," consisting of Guastavino's, Rose Group Park Avenue, BA and MADDD. In a telling indication that plaintiffs have named BA to add a misperceived deep pocket, plaintiffs refer "[u]pon information and belief" to BA's finances. *Id.* ¶¶ 8 and 77. Plaintiffs have no legitimate reason to speculate, much less erroneously, about the net income BA earned from the sale.[1]

Additionally, while plaintiffs allege the "Corporate Defendants" began making "a series of [signage and other physical] changes to the Plaza" in 2000 (*id.* ¶ 48), all the alleged acts of interference with plaintiffs' supposed rights occurred following BA's sale of the Ground Lease to MADDD, on May 12, 2020. For example, plaintiffs allege that:

---

[1] Indeed, given the absence of any allegations of specific conduct undertaken by BA against Basinski and others, let alone during the limited period that would satisfy the various statutes of limitations, the inclusion of BA as a defendant smacks of a money grab. Plaintiffs offer no factual basis to speculate that BA, as Ground Lesse, received any tangible economic benefit from the retailers' alleged interference with plaintiffs' access to the Plaza. And while they mention a $42 million sale of the Ground Lease to MADDD (Dkt. No. 24 ¶ 50), they ignore many factors (including the publicly known bankruptcy of BA's primary tenant and the existence of a mortgage loan of about $30 million) that substantially reduced the net return BA made on the sale. Their inclusion of BA as a potential deep pocket is unfair, grossly inaccurate, indefensible and offensive, especially to BA's principal, the nearly 80-year-old widow of Sheldon Gordon.

- In the "summer of 2020," an employee of either BA or MADDD "(whichever company held the ground lease … at the time)" "told him he could not exercise" there (*id.* ¶ 55);
- Employees of the venue operators (*id.* ¶ 55) or of the Corporate Defendants (*id.* ¶ 56) directed Basinski to leave the Plaza on March 31, 2023, June 7, 2023, and March 13, 2024. *Id.* ¶ 57.
- Similar incidents involving plaintiffs Ciavolino or Basinski occurred in February 2025, on May 25, 2025 and during the summer of 2025 (*id.* ¶¶ 58-60)[2]; and
- The "Corporate Defendants" barricaded the Plaza entrance in February 2025. *Id.*

The Complaint then alleges a series of more tense incidents occurring between December 3, 2025, and August 11, 2026, that purportedly involved "security guards employed by the Corporate Defendants", "Defendant John Doe # 1 (a person allegedly employed by the Corporate Defendants), Defendant Rose, certain named New York Police Department Officers, Gustavino's, Rose Group Park Avenue and MADDD. *Id.* ¶¶ 61-68. None of these allegations refers expressly to BA by name or contains any information establishing how BA is connected to such allegations, and each incident allegedly occurred years after BA sold and assigned the Ground Lease to MADDD.

**D. Procedural History**

Plaintiffs filed this action in a New York state court on **August 24, 2026** (Kennedy Decl. Ex. 3). MADDD later removed the action to this Court. *See* Dkt. No. 1. Plaintiffs then filed the (First Amended) Complaint on October 19, 2026. Dkt. No. 24.

[2] Notably, the Complaint distinguishes between "May 2025" and the "summer of 2025, thereby acknowledging that the summer only begins in late June of the year.

## Argument

BA cannot be held liable to plaintiffs because BA assigned the Ground Lease to MADDD, on May 12, 2020, prior to any of the alleged misconduct upon which plaintiffs base their clams. *See* Kennedy Decl. Exs. 1 and 2. This Court may consider the precise date of sale because the Complaint acknowledges the sale, and the transaction is a matter of public record – available on ACRIS. *See Chambers v. Time Warner, Inc*., 282 F.3d 147, 152–53 (2d Cir. 2002); Fed. R. Evid. 201 (empowering the Court to take judicial notice of such records).[3] Once the Complaint is read in light of the assignment of the Ground Lease, plaintiffs state no claim for relief against BA under their own theory of liability, which is solely predicated on BA's role as Ground Lessor. Additionally, all claims are time-barred as to BA under the applicable New York statute of limitations, regardless of the veracity of plaintiff's allegations.[4]

### I.

### THE COMPLAINT DOES NOT STATE ANY VALID CLAIM AGAINST BA BECAUSE <u>IT PREDICATES BA'S LIABILITY ON ACTS OCCURING AFTER THE ASSIGNMENT</u>

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

[3] Alternatively, the Court may consider the Sale and Assignment attached to the Kennedy Decl. pursuant to Fed. R. Civ. P. 12(b)(6), without converting the motion to one for summary judgment under Fed. R. Civ. P. 56, because the Complaint references the sale transaction, admits that it occurred in 2020 and alleges that the lease between MADDD and the City requires the lessee to maintain the Plaza "as 'a sitting area accessible to the public.'" Dkt No. 24 ¶ 50; *see, e.g., Chambers v. Elektra Records,* 282 F.3.d 147, (2d Cir. 2002) (stating, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" (citation omitted).

[4] The Fourth and Fifth Causes of Action are directed at government actors, not BA. Dkt No. 24 ¶¶ 78-82.

accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), *citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft, supra,* 556 U.S. at 678 (2009), *citing Twombly,* 550 U.S. at 556-57.

Furthermore, to avoid dismissal, the Complaint must allege facts entitling plaintiff not only to relief against BA, but also to relief against BA **under the legal theory** embraced by plaintiff. *See, e.g., Ashcroft, supra,* 556 U.S. at 682 (reasoning that where respondent's constitutional claims "rest solely" on petitioner's "ostensible 'policy of holding post-September-11th detainees' in the ADMAX SHU once they were categorized as of 'high interest'", the complaint must allege facts that plausibly enable petitioners "**to prevail on that theory**" by adopting "a policy of classifying them … as of 'high interest' because of their race, religion or national origin".) (Emphasis added).

Here, plaintiffs do not allege facts that plausibly enable them to prevail on their theory that BA is liable based solely on BA's status as a former Ground Lessee. As a matter of public record, BA was not the Ground Lessee when the alleged acts of interference occurred, commencing with Basinski's being "told" in the "summer of 2020" that he could not exercise at the Plaza. Stated differently, plaintiffs cannot obtain relief **against BA** by simply attributing liability to "whichever company held the ground lease with the City at the time" because BA had already transferred all its rights and title under the Ground Lease to MADDD. *See Plusgrade L.P. v. Endava Inc.*, No. 1:21-CV-1530 (MKV), 2023 WL 2402879, at *6 (S.D.N.Y. Mar. 8, 2023) (granting motion to dismiss where plaintiff grouped defendants together and alleged conduct that occurred prior to the involvement of all parties against all defendants). Whether that theory has any legal validity as

against MADDD based on its status as Ground Lessee during the relevant time period is irrelevant to BA's liability. Plaintiffs' theory has no plausible factual basis as against BA in light of plaintiffs' own factual pleadings, which render its theory of liability impossible.

Nor can plaintiffs overcome this threshold – and global – defect in the Complaint's allegations against BA by grouping BA together with MADDD and others in an undifferentiated group of "Corporate Defendants". As the Second Circuit has observed, Rule 8 "requires, at a minimum, that a complaint give each defendant 'fair notice of the claims against it and the factual grounds upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. Apprx. 33, 34 (2d Cir. 2001), *citing Ferro v. Ry. Express Agency, Inc.,* 296 F.2d. 847, 851 (2d Cir. 1995) (granting motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 8 for failing to satisfy the minimum pleading standards after finding plaintiff lumped defendants together with no basis to distinguish conduct); "By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" (*Atuahene, supra,* 10 F. App'x. at 34), the Complaint provides no basis upon which to saddle BA with liability to plaintiffs and fails to meet the minimum pleading standards as required by the Federal Rules of Civil Procedure.

Moreover, plaintiffs' First Cause of Action, seeking a declaratory judgment, does not state a plausible claim against BA, as the Complaint alleges no facts supporting its conclusory assertion of "an actual, present and justiciable controversy" existing between Plaintiffs and BA respecting the legal status and public accessibility of the Plaza. Dkt. No. 24 ¶ 71. Indeed, the very purpose of a declaratory judgment is to declare the parties' respective rights such that the parties can voluntarily change their behavior in deference to the declaratory judgment. *See, e.g.,* 28 U.S.C.A. § 2201-2202; *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (stating that the Declaratory Judgment Act requirement for a "case of actual controversy" requires the same type

of "Cases" and "Controversies" that are "justiciable under Article III"); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (finding that to qualify as a justiciable "case or controversy under Article III, 'the controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests'"), *aff'd*, 568 U.S. 85 (2013).

Accordingly, the Complaint fails to state a plausible claim and must be dismissed as against BA pursuant to Rule 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

## II.

## INDEPENDENTLY, EACH OF THE CAUSES OF ACTION DIRECTED AT BA, IS TIME BARRED

Even if plaintiffs alleged a plausible claim for relief against BA (they do not), all their Causes of Action against BA are barred by the governing New York statutes of limitations.

### A. Declaratory Judgment (First Cause of Action)

A declaratory judgment action is governed by the statute of limitations periods that would apply to the underlying claim. *Accord Stein v. Garfield Regency Condo*., 65 A.D.3d 1126, 886 N.Y.S.2d 54 (2009) ([T]he applicable statute of limitations for [a declaratory judgment] action depends on the underlying claim and the 'nature of the relief' sought"); Courts look at the substantive rights relating to the declaratory judgment and apply the statute of limitations applicable to that substantive right. *See, e.g., Porwick v. Fortis Benefits Ins. Co*., No. 99 CV 10122 (GBD), 2004 WL 2793186, at *4 (S.D.N.Y. Dec. 6, 2004) ("The statute of limitations period applicable to the declaratory judgment action requires an examination of the underlying substantive claim upon which it is premised."); *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 479 (S.D.N.Y. 2016) ("[I]n ascertaining the governing statute of limitations, courts look beyond the form and to the substance of the sought-after remedy."); *accord Stein v. Garfield Regency Condo*., 65 A.D.3d 1126, 1127, 886 N.Y.S.2d 54 (2d Dept 2009) ([T]he applicable statute

of limitations for [a declaratory judgment] action depends on the underlying claim and the 'nature of the relief' sought");

In the First Cause of Action, plaintiffs seek to declare the "legal status and public accessibility of the Plaza[.]" Dkt. No. ¶ 71. The allegations, which challenge the "authority of Defendant to exclude members of the public [from the Plaza] at their discretion, echo plaintiffs' Cause of Action for public nuisance that substantially interferes with public rights of access (*id.* ¶ 7), their Third Cause (unjust enrichment) and Sixth Cause (for civil rights violations by a public actor). As seen below, each of these Causes of Action have a three-year statute of limitations under New York law. And, since BA ceased to have any legal interest in the Plaza on May 20, 2020, the filing of the state court complaint on August 24, 2026, is untimely.

**B. Public Nuisance (Second Cause)**

Under New York law, a public nuisance claim accrues when injury becomes apparent, and the related cause of action will be time-barred when filed outside of that limitations period. *See* N.Y. C.P.L.R. 214 (McKinney); *Pintilie v. Town of E. Hampton,* 258 N.Y.S.3d 489 (N.Y. Sup. Ct. 2026) (granted defendant's motion to dismiss nuisance claim as untimely and citing cases affirming a three year statute of limitations applies to nuisance claims); *City of New York v. Coll. Point Sports Ass'n, Inc.*, 61 A.D.3d 33, 49 (2009) (dismissing common-law and statutory nuisance claims as time-barred by "the three-year statute of limitations applicable to nuisance, as set forth in CPLR 214(4) and 214(2)").

Plaintiffs allege that the Corporate Defendants "have engaged, and continue to engage in in conduct," interfering with their public right of access to the Plaza. Dkt. No. 24 ¶ 74.[5] To the

[5] If and to the extent the Complaint were construed to allege a public nuisance on the part of BA in 2020, when the "Corporate Defendants" allegedly "made a series of changes to the Plaza" that

extent plaintiffs allege an injury to the public's rights in the summer of 2020, when an employee of "whichever company held the ground lease with the City at the time" told Basinki he could he could not exercise there, they blew the three-year statute of limitations by waiting six years to file suit, in August 2026. *See* N.Y. C.P.L.R. 214 (McKinney); *Pintilie v. Town of E. Hampton,* 258 N.Y.S.3d 489 (N.Y. Sup. Ct. 2026) (finding that nuisance claims accruing in 2015 were time-barred when plaintiff commenced the action in 2022).

And while plaintiffs allege a series of incidents occurring between March 31, 2023, and August 11, 2026, in which employees of the "Corporate Defendants", the NYPD and various security personnel physically denied Basinki access to the Plaza, they cannot revive their time-barred public nuisance claim **against BA**, for two reasons.

First, the three-year statute of limitations bars Causes of Action for any injury occurring prior to August 24, 2023. Second, plaintiffs cannot overcome BA's May 12, 2020, sale of its Ground Lease simply by impermissibly grouping BA into the defined term Corporate Defendants when BA has no affiliation or relationship with, or legal interest in, the other Corporate Defendants or the property at issue in this action. And, while BA would deny having engaged in any acts of public nuisance, the Cause of Action must be dismissed on statute of limitations grounds because any alleged acts of public nuisance by BA could only have occurred prior to May 12, 2020. Yet plaintiffs waited more than three years (indeed, more than six years) prior to filing suit.

**C. Unjust Enrichment (Third Cause)**

"Under New York law, the statute of limitations for unjust enrichment is three years when monetary relief is sought and six years when equitable relief is sought period. Thus, the choice of

---

were unauthorized by the Landmark Preservation Commission (*id.* ¶ 48), plaintiffs blew the three-year statute of limitations by waiting some 26 years to file suit.

the applicable statute of limitations depends upon the substantive remedy which the plaintiff seeks." *Bascunan v. Elsaca*, 2021 WL 3540315, at *6 (S.D.N.Y. Aug. 11, 2021) (citations omitted). Here, plaintiffs allege that defendant BA profited "from the illegal use and commercial exploitation of the Plaza by their tenants" such that they have been "unjustly enriched" by, among other things, the enhance value and revenue-producing capacity of the leasehold. Dkt. No. 24 ¶¶ 76.77.

Plaintiffs are wildly speculating that BA profited from the supposedly "illegal use and commercial exploitation of the Plaza by their tenants" via "rent, fees [and] revenue sharing agreements." Dkt. No 24 ¶ 77. That said, here, as in *Bascunan, supra,* plaintiffs are clearly seeking "monetary relief" on their unjust enrichment claim, as they request "compensatory and punitive damages in an amount to be proven at trial." NYSCEF No. 24 at p. 28, Item 8. Likewise, here, as in *Bascunan*, they cannot transform their "unjust enrichment" remedy into equitable relief by seeking an "accounting of the revenue derived by the Corporate Defendants as a result of their illegal and unauthorized use of the Plaza, for which they were unjustly enriched, to be paid into a court-approved restoration fund dedicated to the preservation of public space in Midtown East." *Id.* Item 7. *See Bascunan*, supra, 2021 WL 3540315, at *7 (rejecting the plaintiffs' attempt to transform a claim for monetary relief into one for equitable relief by seeking "'an order requiring the return of all funds misappropriated by the defendants.").[6]

"The three-year statute of limitations 'begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution.'" *Bascunan, supra*, 2021 WL 3540315 at * 7. Accordingly, if plaintiffs have an unjust enrichment claim against BA (they do not), that cause of

[6] *Bascunan* relies on *Lia v. Saporito*, 541 F.App'x 71, 75 (2d Cir. 2013), in which the Second Circuit held that "[t]he calculated use of the term 'disgorgement' instead of other equally applicable terms such as repayment, recoupment, refund, or reimbursement, should not be permitted to distort the nature of the claim so as to expand the applicable limitations period from three years to six.".

action accrued as early as the 2000s, when the venue operators allegedly began to profit in their private enterprises as venue operators by excluding the public from the Plaza, thereby expanding the space in which they could conduct their business. Even assuming plaintiffs can reach back three years prior to the filing of suit, to August 24, 2023, the unjust enrichment claim against BA is time barred because BA's involvement with the Plaza ended upon the sale of the Ground Lease to MADDD, on May 12, 2020. Indeed, the Cause of Action for unjust enrichment as to BA would be barred even if the Court were to apply the six-year statute of limitations applying to causes of action seeking equitable relief.

**D. Private Actor Under 42 U.S.C. § 1983 (Sixth Cause)**

Section 1983 of Title 42 of the U.S. Code does not contain a statute of limitations of its own, so federal courts utilize the forum state's personal-injury statute of limitations when analyzing these claims. *See Owens v. Okure*, 488 U.S. 235, 250 (1989); *Ruane v. Cnty. of Suffolk*, 923 F. Supp. 2d 454, 458 (E.D.N.Y. 2013) ("Because there is no federal statute of limitations governing actions brought pursuant to Section 1983 actions, courts apply the forum state's general personal injury statute of limitations"). In New York, the personal-injury statute of limitations is three years. N.Y. C.P.L.R. 214 (McKinney); *Ruane v. Cnty. of Suffolk*, supra, 923 F. Supp. 2d at 458 (finding an action arising in New York under Section 1983 has a statute of limitations of three years). A Section 1983 claim accrues when the plaintiff has a complete and present cause of action, i.e., when the plaintiff has sustained an injury due to discriminatory misconduct. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Here, the Complaint does not allege any discriminatory conduct on the part of BA occurring within three years prior to the filing of the state action, on August 24, 2026. To the extent the Complaint purportedly attributes certain discriminatory conduct to plaintiffs occurring after

August 24, 2023, such conduct cannot plausibly state a timely claim against BA. By then, BA had already sold its Ground Lease to MADDD, on May 12, 2020, and the Complaint does not allege any factual basis for imposing section 1983 liability upon BA following its sale and assignment of the Ground Lease. Nor can plaintiffs circumvent the three-year statute of limitations by including "the Corporate Defendants", along with Rose, in allegations of discrimination that do not differentiate between BA and MADDD or attribute any specific conduct or action to a particular defendant.

Because the Section 1983 claim is untimely on the face of the complaint and the judicially noticed recorded Assignment, this claim must be dismissed against BA. *See Ruane v. Cnty. of Suffolk*, *supra,* 923 F. Supp. 2d at 458 (granting defendant's Rule 12(b)(6) motion to dismiss plaintiffs Section 1983 claims because the complaint was filed more than three years after the claimed unlawful conduct).

**E. Other Causes of Action**

Plaintiffs' Fourth and Fifth Causes of Action are not directed at BA, but rather at government actors. In their Seventh Cause of Action (for trespass to chattels) and Eighth Cause of Action (assault and battery), plaintiffs plead allegations of wrongfully physical interactions with Basinski occurring in December 2025. *See e.g.,* Dkt. No. 24 ¶ 61 (alleging that on December 3, 2025, security guards "employed by the Corporate Defendants … picked up various pieces of Basinski[‘s] property and threw them toward 59th Street); *id.* (alleging that NYPD Lieutenant Tai "then arrested Basinski, placed him in handcuffs, and had him transported to the 19th Precinct).

Although plaintiffs assert these Causes of Action against "Defendant John Doe #1" and define that person as an employee of one of the Corporate Defendants, plaintiffs cannot plausibly assert these Causes of Action against BA because it sold the Ground Lease to MADDD more than

four-and-one-half years earlier, on May 12, 2020. Plaintiffs' inclusion of BA in the claims involving John Doe #1 is simply another example of their impermissibly lumping BA into the defined term of "Corporate Defendants" without alleging how or why an employee of BA would be performing duties at a property that BA had divested all interest in over six years ago.

Moreover, the Complaint contains no allegation that an employee of BA physically interacted at all with Basinski while BA held the Ground Lease prior to May 12, 2020. Yet, even if plaintiffs somehow intended to make such an allegation (something it does not do)), any such Cause of Action would clearly be barred as against BA by New York's three-year statute of limitations for trespass to chattels and its one-year statute of limitations for assault and battery. *See, e.g.,* N.Y. C.P.L.R. 214 (McKinney); N.Y. C.P.L.R. 215 (McKinney); *Sporn v. MCA Recs., Inc*., 58 N.Y.2d 482, 488 (1983) (finding that a three year statute of limitation applies to trespass to chattel claims as prescribed under CPLR 214); *Yong Wen Mo v. Gee Ming Chan*, 17 A.D.3d 356, 358 (2005) (finding assault and battery claims are time-barred due to New York's one year statute of limitation); *Kavazanjian v. Rice*, No. 03-CV-1923 FB SMG, 2008 WL 5340988, at *7 (E.D.N.Y. Dec. 22, 2008) (granting a motion to dismiss assault and battery claim because New York's statute of limitations for assault and battery is one year).

## Conclusion

For the foregoing reasons, BA respectfully requests that the Court dismiss all claims against it in the First Amended Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 13, 2026

*<u>/s/ James W. Kennedy</u>*
James W. Kennedy

James W. Kennedy (JK3342)
**MINTZ & GOLD LLP**
600 Third Avenue, 25th Floor
New York, New York 10016
(212) 696-4848 (tel)
(212) 696-1231 (fax)
kennedy@mintzandgold.com

*Attorney for Defendant*
*<u>Bridgemarket Associates, L.P.</u>*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 4,917 out of 8750 available words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: November 13, 2026
New York, New York

*/s/ James W. Kennedy*
James W. Kennedy