UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

SAM ROSENTHAL, ISKANDER KHAN, and LUIGI CIAVOLINO JR., on behalf of themselves and all others similarly situated, and SEAN BASINSKI, individually,

Plaintiffs,

-against-

No. 1:26-cv-07715 (JAV)(RFT)

GUASTAVINO'S INC.; ROSE GROUP PARK AVENUE LLC; BRIDGEMARKET ASSOCIATES, L.P.; MADDD 550 BROAD LLC; THE CITY OF NEW YORK; NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION; LOUIS ROSE; NYPD LIEUTENANT ANTHONY TAI; NYPD OFFICER RUBENIAS CANAS; NYPD OFFICER DYSMAIRY GUZMAN; and JOHN DOE #1,

Defendants.
-----------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS GUASTAVINO'S INC., ROSE GROUP PARK AVENUE LLC, AND LOUIS ROSE TO DISMISS THE FIRST AMENDED COMPLAINT**


CUTI FRISCH PLLC

*Attorneys for Defendants Guastavino's Inc., Rose Group Park Avenue LLC, and Louis Rose*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

FACTS ........ 2

A. The City's Commercial Lease of the Bridgemarket Property ........ 2

B. The Lease's Provisions Regarding the Plaza ........ 3

C. Plaintiffs' Allegations ........ 4

STANDARD OF REVIEW ........ 6

ARGUMENT ........ 7

I. Plaintiffs Cannot Enforce a Lease That Expressly Negates Third-Party Beneficiaries ........ 7

II. The FAC Fails to State a Claim for Public Nuisance Because the Plaza Is Not a Public Place and No Plaintiff Suffered a Special Injury ........ 11

A. The Plaza Was Never Dedicated for Public Use and Is Not a Public Place ........ 12

B. Breach of a Lease Covenant Is Not a Public Nuisance ........ 16

C. No Plaintiff Pleads a Special Injury ........ 17

III. The Moving Defendants Were Not Enriched at Plaintiffs' Expense ........ 19

IV. The Moving Defendants Did Not Act Under Color of State Law ........ 20

V. Basinski Does Not Allege Damage to or Substantial Interference with His Property ........ 24

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Cases**

Page(s)

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280 (2001) .......... 11, 12, 16, 17, 19

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) .......... 21, 23

*Andrews v. Sony/ATV Music Publishing, LLC*, No. 15-cv-7544 (AJN), 2017 WL 770614 (S.D.N.Y. Feb. 23, 2017) .......... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 6, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 6

*Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014) .......... 21, 22

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004) .......... 7

*Blum v. Yaretsky*, 457 U.S. 991 (1982) .......... 21

*Matter of Bronx Council for Envtl. Quality v. City of New York*, 177 A.D.3d 416 (1st Dep't 2019) .......... 13

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983) .......... 8, 17

*Cannon Point Pres. Corp. v. City of New York*, 183 A.D.3d 416 (1st Dep't 2020) .......... 13

*Center for Discovery, Inc. v. D.P.*, No. 16-CV-3936 (MKB)(RER), 2018 WL 1583971 (E.D.N.Y. Mar. 31, 2018) .......... 8

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .......... 6, 7

*Chemical Bank v. Stahl*, 255 A.D.2d 126 (1st Dep't 1998) .......... 16

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) .......... 21, 22

*City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616 (2009) .......... 15

*Concerned Citizens of Forest Hills, Inc. v. West Side Tennis Club*, 250 A.D.3d 879 (2d Dep't 2026) .......... 18, 19

*Copart Indus., Inc. v. Consolidated Edison Co. of N.Y.*, 41 N.Y.2d 564 (1977) .......... 12

*Delaney v. Philhern Realty Holding Corp.*, 280 N.Y. 461 (1939) .......... 16, 18

*East Coast Advanced Plastic Surgery, LLC v. Cigna Health and Life Ins. Co.*, 192 F.4th 134 (2d Cir. 2026) ....................10

*Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC*, No. 06-cv-1510, 2006 WL 2331009 (S.D.N.Y. Aug. 11, 2006) ....................10

*Fabrikant v. French*, 691 F.3d 193 (2d Cir. 2012) ....................21

*Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511 (2012) ....................19, 20

*Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268 (2d Cir. 1999) ....................22

*Matter of Glick v. Harvey*, 25 N.Y.3d 1175 (2015) ....................13

*Grunewald v. Metropolitan Museum of Art*, 125 A.D.3d 438 (1st Dep't 2015) ....................8, 15

*Haire v. Bonelli*, 57 A.D.3d 1354 (3d Dep't 2008) ....................12

*Hernandez v. Jafri*, No. 25-1609, 2026 WL 2883428 (2d Cir. Sept. 25, 2026) (summary order) ....................21

*India.Com, Inc. v. Dalal*, 412 F.3d 315 (2d Cir. 2005) ....................9, 10

*Jackie's Enters., Inc. v. Belleville*, 165 A.D.3d 1567 (3d Dep't 2018) ....................24

*Kilmer v. 99 John's Mkt. Place Inc.*, 81 Misc. 3d 171 (Sup. Ct. N.Y. Cnty. 2023) ....................15, 16, 18

*Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783 (2006) ....................8

*Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160 (1928) ....................8

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242 (2d Cir. 1988) ....................9

*Nepco Forged Prods., Inc. v. Consolidated Edison Co. of N.Y.*, 99 A.D.2d 508 (2d Dep't 1984) ....................9

*Niagara Falls Suspension Bridge Co. v. Bachman*, 66 N.Y. 261 (1876) ....................12

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) ....................6

*Powell v. City of New York*, 85 A.D.3d 429 (1st Dep't 2011) ....................13, 15

*Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103 (2d Cir. 2009) ....................7

*Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79 (2d Cir. 2014) ....................7

*Rice v. City of New York*, 275 F. Supp. 3d 395 (E.D.N.Y. 2017) ....................23

*Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406 (2d Cir. 1990) ....................23

*Saska v. Metropolitan Museum of Art*, 42 Misc. 3d 548 (Sup. Ct. N.Y. Cnty. 2013), *aff'd sub nom. Grunewald v. Metropolitan Museum of Art*, 125 A.D.3d 438 (1st Dep't 2015) ....................8, 11, 17

*Senisi v. John Wiley & Sons, Inc.*, No. 13 Civ. 3314 (LTS)(AJP), 2014 WL 12772203 (S.D.N.Y. Mar. 28, 2014) ....................10

*SM Kids, LLC v. Google LLC*, 963 F.3d 206 (2d Cir. 2020) ....................7

*Star Ins. Co. v. At-Saf, Inc.*, No. 22-CV-7968 (EK)(TAM), 2024 WL 4333842 (E.D.N.Y. Sept. 27, 2024) ....................10

*Sutton Area Community, Inc. v. City of New York*, 83 N.Y.2d 825 (1994) ....................3, 14

*Swartz v. Swartz*, 145 A.D.3d 818 (2d Dep't 2016) ....................20

*Wall St. Garage Parking Corp. v. New York Stock Exch., Inc.*, 10 A.D.3d 223 (1st Dep't 2004) ....................17, 18

*West Coast Settlements II, LLC v. TVPX ARS, Inc.*, 820 F. Supp. 3d 286 (S.D.N.Y. 2025) ....................7

**Statutes and Ordinances**

Page(s)

28 U.S.C. § 2201 (Declaratory Judgment Act) ....................10

42 U.S.C. § 1983 ....................2, 21, 22, 23

N.Y.C. Admin. Code § 19-157(a) ....................11

N.Y.C. Charter § 384 ....................14

N.Y.C. Zoning Resolution § 33-13 ....................11

N.Y.C. Zoning Resolution § 37-70 ....................11

**Rules**

Page(s)

Fed. R. Civ. P. 12(b)(6) ....................1, 7

Fed. R. Evid. 201(b)(2) ....................7

**Other Authorities**

Page(s)

14 N.Y. Prac., New York Law of Torts § 2:9 ....................24

Brief for Defendants-Respondents, *Powell v. City of New York*, 2010 WL 10202004 .......... 13

Brief for Plaintiffs-Appellants, *Powell v. City of New York*, 2010 WL 10202003 .......... 13

Restatement (Second) of Torts § 821B(1) (1979) .......... 12

Guastavino's Inc. ("Guastavino's"), Rose Group Park Avenue LLC ("RGPA"), and Louis Rose (the "Moving Defendants") submit this memorandum of law to support their motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the First, Second, Third, Sixth, and Seventh Causes of Action of the First Amended Complaint (Dkt. 24, the "FAC").[1]

## PRELIMINARY STATEMENT

For more than forty years, the City of New York has leased the land it owns beneath and beside the Queensboro Bridge to a private developer for commercial use. The Third Amended and Restated Lease (the "Lease") between the City and its Tenant permits the Tenant to operate or sublet the premises as "a first class food-oriented and specialty retail marketplace." On the outdoor space south of the restaurant (the "Plaza"), the Lease requires the Tenant to provide "a sitting area accessible to the public," but also permits the Tenant to conduct commercial food service. The FAC asserts that the Corporate Defendants have created a public nuisance by excluding members of the public from the Plaza in violation of the Lease. Asserting that the City tolerates this violation, Plaintiffs sue to enjoin it. But only the City has the legal right to seek a judgment declaring what the Lease means.

The FAC's first two claims – for declaratory judgment and public nuisance – fail because neither Plaintiffs nor any member of the public excluded from the Plaza has a legal basis to seek to enforce the Lease's public-sitting-area covenant. Because Plaintiffs are not parties to the Lease, and the Lease's express clause negating the existence of third-party beneficiaries is dispositive, Plaintiffs lack contractual standing to obtain a judgment declaring the Lease's terms.

---

[1] Defendants MADDD 550 Broad LLC (the "Tenant") and Bridgemarket Associates L.P. ("Bridgemarket"), the original ground tenant, also move to dismiss the FAC. This memorandum defines "Corporate Defendants" as the Tenant, Guastavino's, and RGPA, collectively. The FAC's definition also includes Bridgemarket. FAC ¶8.

*See* Point I, *infra*. Plaintiffs' contention that barring the public from the Plaza in violation of the Lease is a public nuisance is baseless because the Plaza is not a "public place" under New York law and, in any event, the FAC does not adequately allege special injury. *See* Point II, *infra*. Plaintiffs also lack a legal basis to assert the third cause of action. That claim – for unjust enrichment – must be dismissed because the FAC contends that Guastavino's and RGPA overcharged their clients by marketing the Plaza as their "private garden," but never alleges that any Moving Defendant was enriched at *Plaintiffs*' expense, as the law requires to state a claim. *See* Point III, *infra*.

The FAC next asserts that although the Corporate Defendants are private parties, they are liable under 42 U.S.C. §1983 for violating Plaintiffs' constitutional rights regarding their use of the Plaza because they purportedly acted under color of state law. That claim is baseless as a matter of law because the allegations of joint, concerted action are conclusory, and calling the police and encouraging them to make an arrest based on even a false account of a dispute does not amount to state action. *See* Point IV, *infra*. Finally, the FAC alleges that Louis Rose picked up items of Mr. Basinski's property and threw them toward 59th Street, but does not assert that the property was damaged, or that Basinski was deprived of its use for any appreciable period. Such allegations fail to state a claim for trespass to chattels. *See* Point V, *infra.*

The Court should dismiss these claims as against Guastavino's, RGPA, and Mr. Rose.

## FACTS

### A. The City's Commercial Lease of the Bridgemarket Property

The City owns the land under and alongside the Queensboro Bridge between East 59th and East 60th Streets. FAC ¶25.

On August 10, 1983, the City leased the property to the Public Development Corporation, and Bridgemarket acquired the lease by assignment the same day. *See* Decl. of John R. Cuti,

dated November 16, 2026 ("Cuti Decl."), Ex. A (Lease), Recitals at 1. The City and Bridgemarket entered into an Amended and Restated Lease dated July 1, 1986, *id.*; FAC ¶30, which the Court of Appeals later declared valid. *Sutton Area Community, Inc. v. City of New York*, 83 N.Y.2d 825, 827-28 (1994); FAC ¶¶31-32.

In 2002, the City Planning Commission approved a resolution authorizing a new lease of the property. FAC ¶42. Bridgemarket assigned its interest to the Tenant on May 12, 2020, Lease, Recitals at 2; FAC ¶50, and on April 1, 2025, the City and the Tenant entered into the Lease, FAC ¶51, which runs until June 29, 2097, Lease §2.01. The Lease defines "Landlord" as "the City, but only in its proprietary capacity, and not its governmental capacity, unless expressly stated otherwise." Lease, Art. 1(ccc), at 10. The New York City Economic Development Corporation ("EDC") administers the Lease for the City and acts "for and on behalf of Landlord with respect to Landlord's proprietary interest." Lease §1.02.

Guastavino's, a subtenant, opened as a restaurant in 2000 and has been a private event venue since 2005. FAC ¶¶35-36, 43, 77. RGPA has managed its events since 2006; Mr. Rose is RGPA's chairman. FAC ¶¶6-7, 43.

**B. The Lease's Provisions Regarding the Plaza**

The Lease requires the Tenant to construct the improvements necessary to operate the premises "as a first class food-oriented and specialty retail marketplace," that also includes, on the Plaza, "a sitting area accessible to the public." §9.01(ii).

The Lease also requires the Tenant to clean the Plaza each morning and evening, §8.01(c)(i); to limit food service there to "waiter service only, using only non-disposable dishes and flatware," §8.01(c)(ii); to keep out peddlers, §8.01(c)(iii); and to provide "adequate 24-hour security," §8.01(c)(vi).

Only its parties can enforce the Lease. Section 41.13 binds and benefits "Landlord and Tenant and their respective successors and . . . assigns." Section 41.20, titled "No Third-Party Beneficiaries," provides: "There are no third party beneficiaries of this Lease, either express or implied, except as may be provided herein." The Plaza is within the demised premises. Lease §9.01(ii); Ex. A. The City Planning Commission report on which the FAC relies (the "CPC Report"), FAC ¶42, states that "[t]he property is zoned C8-4." Cuti Decl. Ex. B (CPC Report at 2).

**C. Plaintiffs' Allegations**

Plaintiffs Rosenthal, Khan, and Ciavolino (the "Class Representatives") seek to represent a class of "all members of the public who have been excluded from" the Plaza "by virtue of not being guests, invitees or staff at events held in the adjacent event space." FAC ¶18. They are "ordinary members of the public" who, "[l]ike other members of the class," were "deterred from using the plaza, denied entry, or asked to leave." FAC ¶21. They acknowledge that "dozens and perhaps hundreds of people use the Plaza daily when the Corporate Defendants are not holding events there." FAC ¶19. Mr. Basinski "is not a member of the proposed class" and sues individually, alleging that he "was assaulted in the Plaza, had his personal property thrown from the Plaza, was threatened with arrest, was arrested, and was charged with trespassing." FAC ¶21.

Mr. Basinski alleges that on seven occasions employees of Guastavino's or RGPA asked him to leave the Plaza when Guastavino's "appeared to be hosting an event" or an employee was "counting people entering Guastavino's for an event." FAC ¶¶55-57, 59, 61-62, 64-65. On March 31, 2023, when he asked for a copy of the lease, an employee responded that the NYPD "understands, in the Community Affairs division, what the arrangement is." FAC ¶55. On March 13, 2024, an employee said the police had been called; none arrived. FAC ¶57. On December 3, 2025, guards told him to leave and he "refused and continued to photograph his Ebay

merchandise"; Mr. Rose told him the Plaza was "my property" and "picked up various of Basinski possessions and threw them toward 59th Street"; John Doe #1 struck his hand, knocking his phone to the ground; Basinski called 911; and Lieutenant Tai of the Nineteenth Precinct responded, heard Basinski's account, and arrested him for trespass, a charge dismissed on December 22, 2025. FAC ¶¶61-63. On April 11, 2026, a guard said he did not press charges because "I know the police." FAC ¶64. On each of the other six occasions, Basinski left voluntarily. FAC ¶¶55-57, 59, 64-65.

Mr. Basinski attributes three other exclusions to the ground tenant. FAC ¶¶54, 66, 68. On April 17, 2026, the "building manager," allegedly employed by the Tenant, asked him to leave and called the police; Officers Canas and Guzman told him the Plaza was private property; Officer Canas said she knew that because she went there "very often" and, when he asked for paperwork, replied, "I don't need paperwork"; and seven officers escorted him out. FAC ¶66. On the other two occasions an employee told him to stop what he was doing, and he left voluntarily. FAC ¶¶54, 68. Basinski wishes to return "to, inter alia, photograph items to sell on Ebay and make short Instagram videos about how he has been excluded from the Plaza." FAC ¶69.

Each Class Representative alleges that "the Corporate Defendants" or their employees excluded him from the Plaza. *See* FAC ¶¶8, 53, 58, 60. In or around 2015, an employee asked Mr. Khan to leave; "[t]oday, he frequently walks by the Plaza, sees it barricaded, and does not enter." FAC ¶53. Mr. Ciavolino began working nearby in February 2025 and on occasion used the Plaza; over the following eighteen months, on approximately five occasions, he found barricades at the Plaza's entrance and was told it was closed. FAC ¶58. In summer 2025, an employee told Mr. Rosenthal the Plaza was closed; he left and has not returned. FAC ¶60. The FAC also alleges that a production company closed the Plaza for a film shoot on July 24 and 25,

2026, without a City permit. FAC ¶67. No Plaintiff claims he tried to enter on either day.

Plaintiffs seek a declaration that the Plaza is "a public space," an injunction barring the Corporate Defendants from "using the Plaza in furtherance of events taking place in their adjacent indoor event space," a determination that the Corporate Defendants' practice constitutes a public nuisance, an accounting of revenue to be paid into "a court-approved restoration fund dedicated to the preservation of public space in Midtown East," and compensatory and punitive damages. Prayer ¶¶3-4, 6-8.

## STANDARD OF REVIEW

A complaint fails to state a claim unless it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and assertions of legal conclusions are not presumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).[2]

The Court may consider the Lease and the CPC Report because the FAC relies on them. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," and a court may also consider a document on which the complaint "relies heavily" and is thus "integral" to it); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (court may consider "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" (internal quotation marks omitted)). The FAC quotes the Lease, FAC ¶51; alleges that the Corporate Defendants violated

[2] The Moving Defendants dispute many of the alleged facts, which are deemed true on this motion.

their "leases with the City," FAC ¶49; and relies on the lease's terms to allege which defendants made physical changes to the Plaza, FAC ¶52. It "is replete with references to the contract[] and requests judicial interpretation of [its] terms." *Chambers*, 282 F.3d at 153 n.4. Plaintiffs also rely on the CPC Report, FAC ¶42, which, in any event, is a public record. *See* Fed. R. Evid. 201(b)(2); *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (on a motion to dismiss a court "may also look to public records").

## ARGUMENT

### I. Plaintiffs Cannot Enforce a Lease That Expressly Negates Third-Party Beneficiaries

The First Cause of Action seeks a declaration concerning "the legal status and public accessibility of the Plaza, including the authority of Defendants to exclude members of the public." FAC ¶71. The FAC cites a single source of the public-access right Plaintiffs seek to vindicate: the Lease. FAC ¶51.

Whether Plaintiffs may enforce the Lease is a question of contractual standing, which "asks . . . whether a party has the right to enforce a contract." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020). Contractual standing "is distinct from Article III standing and does not implicate subject-matter jurisdiction"; because it "speaks to a party's right to relief," a challenge to contractual standing goes to the merits and is properly raised under Rule 12(b)(6). *See id.* at 211-12 (vacating dismissal for lack of subject-matter jurisdiction). *Accord West Coast Settlements II, LLC v. TVPX ARS, Inc.*, 820 F. Supp. 3d 286, 289 (S.D.N.Y. 2025).

Plaintiffs lack contractual standing because "the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014). "A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that clearly evidence an intent to permit enforcement by the third party in question." *Premium Mortg. Corp.*

*v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (cleaned up). Plaintiffs are not parties to the Lease, and the Lease does not permit them to enforce it.

That a City lease contains a covenant benefiting the public does not mean that members of the public can sue to enforce it. The opposite is true. In *Grunewald v. Metropolitan Museum of Art*, 125 A.D.3d 438 (1st Dep't 2015), museum visitors sued as purported third-party beneficiaries of the City's lease with the Metropolitan Museum, which required the Museum to keep its galleries open to the public free of charge on specified days, and sought to enjoin the Museum from charging admission fees. *See Saska v. Metropolitan Museum of Art*, 42 Misc. 3d 548, 552 (Sup. Ct. N.Y. Cnty. 2013), *aff'd sub nom. Grunewald*, 125 A.D.3d 438. The First Department held that they lacked standing "because the benefit to them is incidental and not direct." 125 A.D.3d at 439 (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983)). "Government contracts often confer benefits to the public at large [but that] is not . . . a sufficient basis in itself to infer the government's intention to make any particular member of the public a third party beneficiary, entitled to sue on such contract." *Id.* "In a broad sense it is true that every city contract, not improvident or wasteful, is for the benefit of the public. More than this, however, must be shown to give a right of action to a member of the public not formally a party." *Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 164 (1928) (Cardozo, C.J.) (one who contracts to heat a public building "is not liable for breach of contract to a visitor who finds the building without fuel, and thus contracts a cold"); *accord Center for Discovery, Inc. v. D.P.*, No. 16-CV-3936 (MKB)(RER), 2018 WL 1583971, at *7 (E.D.N.Y. Mar. 31, 2018) ("In the case of government contracts, individual members of the public are presumed to be incidental beneficiaries unless a different intention is manifested."). *See also Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786-87 (2006) (tenants of a Mitchell-

Lama complex could not enforce the owner's covenant in a City land disposition agreement, which they alleged required it "to maintain the complex as housing for low- and moderate-income families," because the agreement "explicitly negates any intent to permit its enforcement by third parties such as plaintiffs").

The Lease explicitly provides that "[t]here are no third party beneficiaries of this Lease, either express or implied, except as may be provided herein." Lease §41.20. The Lease limits its benefits only to "Landlord and Tenant and their respective successors and . . . assigns." §41.13. Plaintiffs do not allege that they are parties, successors, or assigns, and identify no provision that excepts them from §41.20. A clause stating that third parties may not enforce a contract "is decisive." *Nepco Forged Prods., Inc. v. Consolidated Edison Co. of N.Y.*, 99 A.D.2d 508, 508 (2d Dep't 1984) (dismissing claim that plaintiff was the "intended beneficiary" of an agreement between a tenant and a utility because the agreement provided that it was not "intended to confer on any other person any rights or remedies"); *accord India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005); *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 249 (2d Cir. 1988) ("where a provision in a contract expressly negates enforcement by third parties, that provision is controlling").

Nor does this Lease's reference to "the public" in §9.01(ii) override the explicit provision that it has no intended or implied third-party beneficiaries. For example, in *India.Com*, the stock purchase agreement named the broker and referred to the obligation to pay his commission, yet those references were "insufficient to confer third-party status where the parties themselves are explicit that they did not intend to create third-party beneficiaries." 412 F.3d at 322; *see also Morse/Diesel*, 859 F.2d at 249 (subcontract provisions that "reflect[ed] and envision[ed] coordinated effort by the various subcontractors" did not overcome "the explicit negation of third

party beneficiary obligations"). If a person identified in a contract cannot sue to enforce it because it contains an explicit negating clause, *a fortiori* the Lease's general reference to "the public" does not permit Plaintiffs to do so. Because such a negating clause is "decisive," *India.Com*, 412 F.3d at 321, Plaintiffs have no right to enforce the Lease.

Pleading the First Cause of Action as a claim for a declaratory judgment does not change the analysis. The Declaratory Judgment Act "does not create an independent cause of action." *East Coast Advanced Plastic Surgery, LLC v. Cigna Health and Life Ins. Co.*, 192 F.4th 134, 144 (2d Cir. 2026) (internal quotation marks omitted). Thus, a "court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *Id.*

"Parties who lack standing to enforce an agreement also lack standing to seek a declaration of rights under the contract." *Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC*, No. 06-cv-1510, 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006). *See, e.g.*, *Andrews v. Sony/ATV Music Publishing, LLC*, No. 15-cv-7544 (AJN), 2017 WL 770614, at *8 (S.D.N.Y. Feb. 23, 2017) (because the agreement provided that the plaintiffs "shall not be third-party beneficiaries under this Agreement," they "would lack standing to maintain a suit to enforce the Agreement's terms, [and therefore] lack standing to seek a declaration of rights under the Agreement"); *Star Ins. Co. v. At-Saf, Inc.*, No. 22-CV-7968 (EK)(TAM), 2024 WL 4333842, at *4 (E.D.N.Y. Sept. 27, 2024) (plaintiff "cannot seek a declaration as to the obligations (or non-obligations) under a contract to which it is a stranger"); *Senisi v. John Wiley & Sons, Inc.*, No. 13 Civ. 3314 (LTS)(AJP), 2014 WL 12772203, at *7 (S.D.N.Y. Mar. 28, 2014) (dismissing photographers' claim for declaration of audit rights under agreements that gave those rights to the stock agencies, not to them). Because they are neither parties to nor intended beneficiaries of

the Lease, Plaintiffs cannot obtain a declaration of rights under it.[3]

The FAC does not cite any other source of a right of public access to the Plaza. It identifies no statute, deed, or recorded easement conferring one; Exhibit B to the Lease, the schedule of title matters, identifies none; and Plaintiffs plead no Parks Department jurisdiction, no Department of Transportation pedestrian plaza designation, *see* N.Y.C. Admin. Code §19-157(a), and no public plaza required by the Zoning Resolution, *see* N.Y.C. Zoning Resolution §37-70.[4] The City approvals, press release, award, and plaque the FAC recites, FAC ¶¶28, 33-42, do not dedicate the Plaza to public use, as shown in the following point. The Court should dismiss the First Cause of Action.

## II. The FAC Fails to State a Claim for Public Nuisance Because the Plaza Is Not a Public Place and No Plaintiff Suffered a Special Injury

"A public nuisance exists for conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons." *532 Madison Ave. Gourmet Foods, Inc. v.*

---

[3] Plaintiffs misinterpret the covenant. Regarding the Plaza, the Lease requires the Tenant to provide "a sitting area accessible to the public," §9.01(ii); permits commercial food service by "waiter service only," §8.01(c)(ii); prohibits peddlers, §8.01(c)(iii); and requires "adequate 24-hour security," §8.01(c)(vi). These terms contemplate the public's use of the sitting area co-existing with commercial food services. They do not make the entire Plaza available for every use a visitor chooses, nor do they include a right to interfere with the Tenant's permissible use of the Plaza. Yet Plaintiffs ask this Court to declare the entire Plaza "a public space," and to enjoin its use in connection with "events taking place in" the adjacent venue, Prayer ¶¶3-4, and Basinski claims a right to use it to photograph merchandise for sale and to film videos, FAC ¶69. The Lease does not support those demands. And even an intended beneficiary "cannot compel specific performance that differs from the remedy provided for in the Lease," because a third-party beneficiary's rights "are no greater than those of the City." *Saska*, 42 Misc. 3d at 561.

[4] The property is zoned C8-4. CPC Report at 2. The Zoning Resolution grants a floor-area bonus for a public plaza only in specifically identified commercial districts, not including C8-4. *See* N.Y.C. Zoning Resolution §33-13.

*Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001); *accord Copart Indus., Inc. v. Consolidated Edison Co. of N.Y.*, 41 N.Y.2d 564, 568 (1977). A claim for public nuisance thus has two elements: (i) a right common to the public, and (ii) conduct that interferes with that right unreasonably. *See* Restatement (Second) of Torts §821B(1) (1979) (a public nuisance requires "an unreasonable interference with a right common to the general public").

Plaintiffs do not state a claim for public nuisance because they do not plausibly allege a right common to the general public to use the Plaza or an unlawful, unreasonable interference with that right, and in any event because the FAC fails to allege the requisite special injury.

**A. The Plaza Was Never Dedicated for Public Use and Is Not a Public Place**

A claim of public nuisance requires a violation of a right "common to all," *Copart*, 41 N.Y.2d at 568. Where, as here, the claim is that a defendant excluded the public from land, the land must be "a public place." *532 Madison*, 96 N.Y.2d at 292. Property does not become a public place merely because the public is admitted to it. *See Haire v. Bonelli*, 57 A.D.3d 1354, 1358 (3d Dep't 2008) (affirming dismissal of public nuisance claim by mall patron shot by a gunman; "[t]hough open to the public, the mall is private property. Plaintiff did not allege an interference with rights belonging to the general public, nor an interest in public land.").

That the City owns the premises does not make the Plaza a public place. The FAC identifies no statute, deed, or easement that gives the public a right to use the Plaza. *See* Point I, *supra*. On the pleaded facts, the only other theory Plaintiffs could invoke to support a claim that the Plaza is a public place is dedication. Under that doctrine, the public acquires a right to use land only when the landowner's actions and statements unmistakably and decisively evince his "intent to dedicate his land to the public use." *Niagara Falls Suspension Bridge Co. v. Bachman*, 66 N.Y. 261, 269 (1876). The owner's acts must "manifest[] a positive and unmistakable

intention to permanently abandon his property to the specific public use"; acts that are "equivocal, or do not clearly and plainly indicate the intention to permanently abandon the property to the use of the public, . . . are insufficient to establish a case of dedication." *Matter of Glick v. Harvey*, 25 N.Y.3d 1175, 1180 (2015). The same rule applies to City-owned property. *Powell v. City of New York*, 85 A.D.3d 429, 431 (1st Dep't 2011) (no implied dedication unless "a municipality's acts and declarations manifest a present, fixed, and unequivocal intent to dedicate.").

Appellate Division decisions in comparable cases make clear that the Plaza was not dedicated for public use and is not a public place. *Powell* involved Asphalt Green, a City-owned recreational campus operated by a private non-profit under an agreement with the City requiring that it be open to the public at least 30 percent of the time. *See* Brief for Defendants-Respondents, *Powell*, 2010 WL 10202004, at *7 (agreement "requires that the campus be available for public use, free of charge, for at least 30 percent of the time it operates"); Brief for Plaintiffs-Appellants, *Powell*, 2010 WL 10202003, at *12 (same). But that did not make the campus dedicated parkland, because it "is operated by a non-city entity and the public's access is restricted 70% of the time to those who pay substantial membership fees." 85 A.D.3d at 431. In *Matter of Bronx Council for Envtl. Quality v. City of New York*, 177 A.D.3d 416, 416-17 (1st Dep't 2019), the First Department ruled that a parcel under Parks Department jurisdiction was not parkland by implication even though its "fencing bore DPR signage," the Department and others "at times referred to the parcel as a park," and the Department had allowed circuses and carnivals there for a few weeks each year. *See also Cannon Point Pres. Corp. v. City of New York*, 183 A.D.3d 416, 417 (1st Dep't 2020) (Parks Department communications "referring to the site as a 'park'" did not establish dedication).

The FAC does not remotely allege that the City dedicated the Plaza to public use as a public place. Nor could it, because the Lease on which the FAC relies shows that the City owns the land in its proprietary capacity, and intended that its property be used for commercial purposes – a "first class food-oriented and specialty retail marketplace," with waiter-served food service on the Plaza – subject to the requirement that the Tenant provide a sitting area accessible to the public. Lease, Art. 1(ccc); §§1.02, 8.01(c)(ii), 9.01; FAC ¶51. Plaintiffs concede that the City owns the land, FAC ¶25, and that it has leased the land to a developer since 1986 for use as a supermarket, retail store, and restaurant, FAC ¶¶30, 35-36, 42, 50-51. The Lease shows that the City first leased the land for commercial development in 1983 and that the current term runs to 2097. Lease, Recitals at 1; §2.01. The press release, award citations, and plaque the FAC recites, FAC ¶¶35-41, are non-binding, colloquial descriptions akin to the signage and references to a "park" in *Bronx Council* and *Cannon Point*. They do not show that the City intended to dedicate its land for public use.

Indeed, far from evidencing an intention to dedicate a public place, the governmental actions Plaintiffs cite are approvals of a *commercial lease*. For example, the Board of Estimate's 1982 approval under Charter §384 "was limited to the business terms of the lease," *Sutton*, 83 N.Y.2d at 828, and the City Planning Commission's 2002 action approved the disposition of the property to EDC so that EDC could "renew and extend the lease to the current lessee," CPC Report at 5-6; FAC ¶42. The Lease's schedule of title matters does not contain any recorded restriction in favor of the public. Lease, Ex. B. And the City is the Landlord "only in its proprietary capacity, and not its governmental capacity." Lease, Art. 1(ccc). A landowner that has leased land for commercial use since 1983, under a lease now running to 2097, that acts under that lease only as a proprietor, and that defines by covenant the sitting area the public may

use on it, has not manifested "a present, fixed, and unequivocal intent to dedicate" the land to the public. *Powell*, 85 A.D.3d at 431. The only right of public access the FAC identifies is the Tenant's contractual covenant to the City.

A covenant in a commercial lease the City signs does not create a common right of the public. In *Grunewald*, for example, the First Department rejected an attempt by members of the public to enforce the covenant in the City's lease to the Metropolitan Museum that required free admission on specified days, because "[g]overnment contracts often confer benefits to the public at large," which "is not . . . a sufficient basis in itself to infer the government's intention to make any particular member of the public a third party beneficiary." 125 A.D.3d at 439. Plaintiffs cannot avoid that rule by pleading the breach of the covenant as a public nuisance. Even when a statute prohibits the conduct at issue, its violation cannot support a public nuisance claim unless the claim is consistent with the Legislature's scheme for enforcing the statute. *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 627-29 (2009) (whether violation of statute barring shipment of cigarettes to consumers supported the City's public nuisance claim "requires an inquiry similar to that undertaken in cases concerning implied private rights of action"; rejecting the claim because it "would not be consistent with the legislative scheme," under which enforcement had "been entrusted to local district attorneys and the Commissioner of Health"); *see also Kilmer v. 99 John's Mkt. Place Inc.*, 81 Misc. 3d 171, 177-78 (Sup. Ct. N.Y. Cnty. 2023) (violation of Administrative Code provision regarding sidewalk displays was not a nuisance per se where the Code assigned enforcement to City agencies and created no private right). The same reasoning applies to the sitting-area covenant: only the City, or EDC acting on its behalf, can enforce it. Lease §§1.02, 41.20.

### B. Breach of a Lease Covenant Is Not a Public Nuisance

Conduct is unlawful for purposes of public nuisance when a statute, ordinance, or regulation prohibits it, or when the defendant occupies a public way without a required license. *Delaney v. Philhern Realty Holding Corp.*, 280 N.Y. 461, 465 (1939) ("If no license has been issued, then an obstruction in the public way is an absolute nuisance, whereas if a permit has been issued but the privilege to obstruct the public way is exercised in an improper manner, then the resulting nuisance is of a kind which arises out of negligence."); *Kilmer*, 81 Misc. 3d at 176 (public nuisance claims divide between those involving negligence and "nuisance per se, that is a nuisance based on an act which is unlawful even if performed with due care" (internal quotation marks omitted)); *532 Madison*, 96 N.Y.2d at 292-93 ("*Unlawful* obstruction of a public street is a public nuisance" (emphasis added)).

The Plaza is not a public way, and the City has licensed the Tenant, through the Lease, to use it for commercial activity. The FAC alleges that the Corporate Defendants used or altered the Plaza without special event permits, Landmarks Commission authorization, or a film permit. FAC ¶¶44, 48, 67. Those allegations assume that the law required such approvals, which is a legal conclusion not deemed true on this motion. *Iqbal*, 556 U.S. at 678. In any event, the FAC identifies no statute, ordinance, or regulation that required such permits, and the nuisance Plaintiffs plead is the exclusion of the public, not the absence of a permit. FAC ¶73; Prayer ¶6.

The only legal obligation the FAC alleges the Corporate Defendants breached by excluding the public is the Lease's sitting-area covenant. FAC ¶51. Breach of contract is not a public nuisance. *See Chemical Bank v. Stahl*, 255 A.D.2d 126, 127 (1st Dep't 1998) (nuisance claim properly dismissed where "the alleged damages are merely for economic loss occasioned by breach of a contract" and not for injury "independent of defendant's failure to fulfill said

contractual obligations"). Plaintiffs' allegation that the Corporate Defendants violate the sitting-area covenant by excluding non-guests from the Plaza, FAC ¶¶18, 47, is deemed true on this motion. But the remedy for any such breach belongs to the City. Plaintiffs lack contractual standing to enforce the Lease, *see* Point I, *supra*, and the FAC alleges that the City, the landlord with authority to enforce the covenant, has "assisted in, acquiesced in, or failed to correct" the exclusions Plaintiffs challenge. FAC ¶24. Members of the public "cannot force [a tenant] to abide by the terms of the Lease in a manner that contravenes the express wishes of its landlord," *Saska*, 42 Misc. 3d at 561, and "[t]he abatement of any public nuisance created by alleged improprieties in defendant's security procedures is a governmental prerogative," *Wall St. Garage Parking Corp. v. New York Stock Exch., Inc.*, 10 A.D.3d 223, 228 (1st Dep't 2004).

### C. No Plaintiff Pleads a Special Injury

Even on the counterfactual assumption that the FAC adequately alleges a public nuisance, the claim must be dismissed because Plaintiffs fail to allege the requisite special injury. "A public nuisance is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large." *532 Madison*, 96 N.Y.2d at 292. The injury must be "of a different kind from that suffered by other persons exercising the same public right," *Burns Jackson*, 59 N.Y.2d at 334 (internal quotation marks omitted). Where the alleged harm is "common to an entire community and the plaintiff[s] suffer[ed] it only in a greater degree than others, it is not a different kind of harm and the plaintiff[s] cannot recover," *532 Madison*, 96 N.Y.2d at 294 (internal quotation marks omitted). In *532 Madison*, businesses sued over the closure of Madison Avenue and Times Square after two construction collapses, but they had no public nuisance claim because "every person who maintained a business, profession or residence" in the closed areas suffered the same kind of loss. *Id.* In *Wall Street Garage*,

checkpoints and vehicle searches around the Stock Exchange harmed the plaintiff garage's business; the First Department vacated a preliminary injunction because the garage had not shown a special injury where "the same circumstances have impeded the similar rights of a large number of other businesses located in the area." 10 A.D.3d at 228. And in *Concerned Citizens of Forest Hills, Inc. v. West Side Tennis Club*, 250 A.D.3d 879 (2d Dep't 2026), residents and owners of property adjacent to Forest Hills Stadium sued over noise from concerts there, alleging violations of the City Noise Control Code; the Second Department affirmed dismissal of the public nuisance and related injunction claims because the complaint "failed to plead a special injury that was different in kind than suffered by the community at large." *Id.* at 882.

The three Class Representatives allege the same injury the public allegedly suffers. The FAC defines the class as "all members of the public who have been excluded from" the Plaza, FAC ¶18, describes the Class Representatives as "ordinary members of the public" who, "[l]ike other members of the class," were "deterred from using the plaza, denied entry, or asked to leave," FAC ¶21, and alleges that "the general public has suffered and is suffering harm by its inability to use and enjoy the Plaza," FAC ¶74.

Mr. Basinski alleges that same common harm, *i.e.*, that he was excluded from the Plaza. FAC ¶¶54-57, 59, 64-65, 68. Basinski does plead additional harms, but he alleges that those harms were caused by separate tortious acts. FAC ¶¶21, 74 (asserting that his property was thrown into the street, and that he had been assaulted, arrested, and told not to return). To be sure, if a person suffers bodily injury or harm to property not suffered by the general public, such allegations might suffice to show a special injury, but only if those harms were caused by the public nuisance. *See, e.g.*, *Delaney*, 280 N.Y. at 464 (plaintiff suffered physical injury from improperly obstructed sidewalk); *Kilmer*, 81 Misc. 3d at 177 (same). Basinski does not allege

that the closure of the Plaza caused the additional harms he claims he suffered. He alleges that John Doe #1 struck his hand and that Mr. Rose threw his property, and the FAC pleads a separate cause of action for each incident. FAC ¶¶87, 89. He alleges that Lieutenant Tai arrested him, FAC ¶61, and the FAC pleads separate causes of action for that conduct too. FAC ¶¶79-82. The FAC thus alleges that those harms were caused by an independent tort committed by a particular defendant, not by the closure of the Plaza. Nor does Basinski's allegation that he lives "less than a block away," FAC ¶74, constitute a special injury. *See 532 Madison*, 96 N.Y.2d at 293 (no special injury where the "neighborhood resident unable to reach the premises" suffered the same kind of harm as everyone else affected by the closures); *Concerned Citizens*, 250 A.D.3d at 882 (residents of property adjacent to the stadium did not suffer special injury from the noise it generated).

## III. The Moving Defendants Were Not Enriched at Plaintiffs' Expense

To state a claim for unjust enrichment, a plaintiff must allege "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotation marks omitted). Although privity is not required, "a plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party," *id.*, and the Court of Appeals has dismissed such a claim at the pleading stage where that relationship was missing. *Id.* at 517-18 (broker whose due-diligence work a rival broker used to earn a commission could not recover from the rival, because the relationship between them was "too attenuated").

The FAC alleges that *clients who paid for events* enriched the Moving Defendants; it does not allege that *Plaintiffs* did. *See* FAC ¶76 (alleging that Guastavino's and RGPA sold "exclusive access to and use of the Plaza" to event clients and thereby obtained "revenues, price

premiums, rental enhancements, avoided costs, and other economic gains directly attributable to their unauthorized control and commercial exploitation of the plaza"). "A cause of action alleging unjust enrichment requires the plaintiff to set forth that the defendant possessed property or assets *of the plaintiff*." *Swartz v. Swartz*, 145 A.D.3d 818, 829 (2d Dep't 2016) (emphasis added). Plaintiffs do not allege that any of them booked an event, paid the Moving Defendants anything, or conferred any other benefit on them. Plaintiffs' relationship to the Moving Defendants is more attenuated than that found insufficient in *Georgia Malone*. There the defendant used the plaintiff's own work product to earn its commission, and the claim still failed because the parties "simply had no dealings with each other." 19 N.Y.3d at 517-18.

The FAC confirms the point. It asks that the revenue be paid not to Plaintiffs or the class but into "a court-approved restoration fund dedicated to the preservation of public space in Midtown East." Prayer ¶7. Because the Moving Defendants were not enriched at Plaintiffs' expense, the Court should dismiss the Third Cause of Action.

## IV. The Moving Defendants Did Not Act Under Color of State Law

The Sixth Cause of Action alleges that the Moving Defendants, private parties, violated Plaintiffs' constitutional rights under color of state law, on two theories pleaded in consecutive (and contradictory) paragraphs. Paragraph 84 alleges that the Moving Defendants acted under color of state law "by acting jointly and in concert with" the Nineteenth Precinct, with which they "had 'an arrangement.'" Paragraph 85 alleges that the Moving Defendants "falsely and fraudulently inform[ed]" the Precinct that the Plaza was private, "thereby using state authority to accomplish exclusions, evictions and arrests that they could not lawfully conduct on their own." The first theory does not state a claim because the allegations of joint action are conclusory. And the second theory is baseless because a citizen who asks the police to make an arrest, even on a false account, does not act under color of state law.

Section 1983 imposes liability only for a deprivation of federal rights "committed under color of state law," a requirement that, for a private defendant, is the same as the Fourteenth Amendment's state-action requirement and "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)); *see Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (conduct that "satisfies the state-action requirement of the Fourteenth Amendment . . . also constitutes action 'under color of state law' for §1983 purposes"). A private party is not liable under §1983 as a "willful participant in joint activity with the State or its agents" unless the complaint pleads facts showing that the private party and the state officials "share some common goal to violate the plaintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a §1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324; *accord Hernandez v. Jafri*, No. 25-1609, 2026 WL 2883428, at *2 (2d Cir. Sept. 25, 2026) (summary order).

Plaintiffs' assertion of joint action, FAC ¶84, does not state a claim because Plaintiffs plead no facts showing that the Moving Defendants made an agreement with the police. Instead, they rely on two remarks from corporate employees to support the allegation of an "arrangement" with the Nineteenth Precinct: an unidentified employee allegedly said on March 31, 2023, that the NYPD "understands, in the Community Affairs division, what the arrangement is," FAC ¶55, and a guard allegedly said on April 11, 2026, that he did not press charges because "I know the police," FAC ¶64. Neither remark describes an agreement or its terms, and neither supports a plausible inference that any Moving Defendant shared with the police a purpose to

violate anyone's rights. *See Ciambriello*, 292 F.3d at 324 (allegation "[o]n information and belief" that a union and county officials "agreed" to arbitrate grievances without notice to the plaintiff did not state a §1983 claim against the union, because the complaint lacked "any factual allegations suggesting that [the union] conspired with the County"). The FAC's accounts of the two occasions when police appeared at the Plaza do not support the joint-action theory because neither describes the police acting at the Moving Defendants' instance. Lieutenant Tai responded to a 911 call that *Mr. Basinski* himself placed, heard Basinski's account, and decided to arrest him. FAC ¶¶61-63. Officer Canas said she knew the Plaza was private because she was from the Nineteenth Precinct and went there "very often," and refused Basinski's request for paperwork because "I don't need paperwork." FAC ¶66.

Paragraph 85, which alleges that the Moving Defendants deceived the police, contradicts paragraph 84, which alleges that they acted jointly with the police, and in any event it does not state a claim. A party who deceives the police to obtain their help does not share a goal with them. Plaintiffs allege that the Moving Defendants obtained "exclusions, evictions and arrests" by "falsely and fraudulently inform[ing]" the Precinct that the Plaza was private. FAC ¶85. On that account the officers acted because they were misled, not because they shared a purpose to violate anyone's rights. *See Betts*, 751 F.3d at 85. And a private party who summons the police and gives them even false information is not for that reason a joint participant in subsequent police conduct. *Id.* at 81, 86 (affirming Rule 12(b)(6) dismissal of claim against wife who "falsely accused Betts of assaulting her" to the responding officers, who arrested him; that he "was arrested upon the false accusation of assault made against him by a private citizen to the police" was "insufficient to state a plausible claim that Shearman and the arresting officers shared a common goal of violating Betts's rights"); *Ginsberg v. Healey Car & Truck Leasing,*

*Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (rental company whose manager called the police to report a customer's disturbance in its showroom during a billing dispute was not a state actor although the responding officer threatened the customer with arrest; "provision of background information to a police officer does not by itself make [the private actor] a joint participant in state action," and "[w]here, as here, a police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct"); *Rice v. City of New York*, 275 F. Supp. 3d 395, 404 (E.D.N.Y. 2017) ("calling the police, even for an improper purpose, does not create private liability under §1983"). The FAC alleges only that the Moving Defendants told the police that the Plaza was private, and the police acted. FAC ¶85; *see also id.* ¶¶61-63, 66. Apart from paragraph 84's conclusory assertion that they "repeatedly summon[ed]" the police, the FAC does not allege that a Moving Defendant summoned the officers who acted. Mr. Basinski himself called 911 on December 3, 2025, FAC ¶61, and the Tenant's building manager called the police on April 17, 2026, FAC ¶66.[5]

The §1983 claim against the Moving Defendants is defective for two additional, independent reasons. First, Guastavino's and RGPA cannot be liable under §1983 for an employee's conduct absent an official policy that caused it. *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408-09 (2d Cir. 1990) (applying *Monell* to private employer). The FAC's single allegation about a "common policy or practice of treating the Plaza as private property," FAC ¶24, is conclusory, and fails to identify which entity or entities allegedly adopted

---

[5] Most of the encounters Plaintiffs describe did not involve the police. In ten of the fourteen, an employee asked someone to leave and the person left, FAC ¶¶53-56, 58-60, 64-65, 68; in another, an employee said the police had been called, but none came, FAC ¶57; and no plaintiff was present at the film shoot, FAC ¶67. Whatever their merits, those encounters are private conduct outside §1983. *Sullivan*, 526 U.S. at 50.

that policy, or when it or they did so. Second, as to Mr. Rose, the only statements the FAC attributes to him are that he told Basinski the Plaza was "my property," told officers that he was "the general manager of this establishment," and introduced another employee to them as "the building manager." FAC ¶¶61-62. It alleges no facts showing that he summoned the officers, asked for an arrest, or swore out a complaint. If the false accusation of assault, repeated to the responding officers, did not make the accuser in *Betts* a state actor, Rose's statements do not make him one. The Court should dismiss the Sixth Cause of Action as against the Moving Defendants.

## V. Basinski Does Not Allege Damage to or Substantial Interference with His Property

"Liability for trespass to chattels will be imposed only if the interference results in harm to the physical condition, quality or value of the chattel or if the owner is deprived of use of the chattel for a substantial time." *Jackie's Enters., Inc. v. Belleville*, 165 A.D.3d 1567, 1572-73 (3d Dep't 2018); *accord* 14 N.Y. Prac., New York Law of Torts §2:9 ("actual damage to the plaintiff's right to possession is a prerequisite to recovery"). The Seventh Cause of Action alleges that Mr. Rose and John Doe #1 grabbed Mr. Basinski's shoes and accessories and threw them "out of the Plaza and into the street on East 59th Street." FAC ¶87.[6] It does not allege that any property was broken, damaged, or lost, that Basinski failed to recover any of it, or that he was without it for a substantial time. *See Jackie's Enters.*, 165 A.D.3d at 1573 (affirming summary judgment dismissing trespass to chattels claim based on defendants' interference with a supplier's delivery, where plaintiff's principal averred that "she ultimately received the delivery

[6] The FAC describes this incident inconsistently. *Compare* FAC ¶61 (Mr. Rose alone "picked up various of Basinski possessions and threw them toward 59th Street") *with* ¶87 (Mr. Rose and John Doe #1 together threw the property "out of the Plaza and into the street on East 59th Street"). Neither version of the facts adequately alleges damage to the property or interference with Mr. Basinski's possession for a substantial period.

in her new location with no appreciable delay and no alleged damage”). The Court should dismiss the trespass to chattels claim asserted against Mr. Rose.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the First, Second, Third, Sixth, and Seventh Causes of Action as against Guastavino’s, RGPA, and Louis Rose.

Dated: New York, New York
November 16, 2026

Respectfully submitted,

CUTI FRISCH PLLC

By: /s/ John R. Cuti
John R. Cuti
233 Broadway, Suite 1720
New York, New York 10279
(212) 285-8000
jcuti@cutifrisch.com

Attorneys for Defendants Guastavino’s Inc., Rose Group Park Avenue LLC, and Louis Rose

**CERTIFICATE OF WORD COUNT**

In accordance with Local Civil Rule 7.1(c) and Rule 5(A) of the Court's Individual Rules and Practices in Civil Cases, I certify that the foregoing Memorandum of Law is 8,260 words, including footnotes but exclusive of the caption page, table of contents, table of authorities, certificates, and signature block. The basis of my knowledge is the word count feature of the word-processing system used to prepare this memorandum.

/s/ John R. Cuti