UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

SAM ROSENTHAL, ISKANDER KHAN, and LUIGI CIAVOLINO JR., on behalf of themselves and all others similarly situated, and SEAN BASINSKI, individually,

Case No. 1:26-cv-07715-JAV-RFT

Plaintiffs,

– against –

GUASTAVINO'S INC.; ROSE GROUP PARK AVENUE LLC; BRIDGEMARKET ASSOCIATES, L.P.; MADDD 550 BROAD LLC; THE CITY OF NEW YORK; NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION; LOUIS ROSE; NYPD LIEUTENANT ANTHONY TAI (TAX #953465); NYPD OFFICER RUBENIAS CANAS (TAX #976507); NYPD OFFICER DYSMAIRY GUZMAN (TAX #958478); and JOHN DOE #1,

Defendants.

--------------------------------------------------------------X

# <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY DEFENDANT MADDD 550 BROAD LLC</u>

**ORAL ARGUMENT REQUESTED**


ROSEN LAW LLC
Gary Rosen, Esq.
216 Lakeville Road
Great Neck, New York 11020
(516) 437-3400
grosen@rosenlawllc.com

*Attorneys for Defendant MADDD 550 BROAD LLC*

## TABLE OF CONTENTS


| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
| A. The parties and the procedural history | 2 |
| B. The Lease | 3 |
| C. What the FAC alleges against MADDD | 4 |
| LEGAL STANDARD | 6 |
| ARGUMENT | 7 |
| POINT I — THE CLASS PLAINTIFFS PLEAD NOTHING AGAINST MADDD | 7 |
| POINT II — THE SIXTH CAUSE OF ACTION (42 U.S.C. § 1983) FAILS AS AGAINST MADDD | 8 |
| A. Asking a visitor to leave and calling the police does not, without more, establish joint action | 8 |
| B. A lease of City land does not alone make the tenant a state actor | 10 |
| C. The alleged escort does not establish a Fourth Amendment seizure | 12 |
| D. The FAC pleads no MADDD policy or custom | 13 |
| E. The Class Plaintiffs plead no sufficient MADDD-specific state action; earlier discrete damages claims are subject to limitations | 14 |
| POINT III — THE THIRD CAUSE OF ACTION (UNJUST ENRICHMENT) FAILS AS AGAINST MADDD | 14 |
| POINT IV — THE SECOND CAUSE OF ACTION (PUBLIC NUISANCE) FAILS AS AGAINST MADDD | 16 |
| A. The Class Plaintiffs plead only the injury common to the public | 16 |
| B. Basinski pleads no special injury caused by MADDD | 17 |
| C. The FAC does not plausibly connect MADDD to creation or maintenance of the nuisance | 18 |
| D. Damages for incidents before August 24, 2023 are time-barred | 19 |
| POINT V — THE FIRST CAUSE OF ACTION (DECLARATORY JUDGMENT) FAILS AS AGAINST MADDD | 19 |
| A. A declaration is a remedy that requires a claim | 19 |
| B. Plaintiffs cannot enforce the City's Lease | 20 |
| C. The FAC pleads no other right enforceable against MADDD | 22 |
| D. The Class Plaintiffs lack standing to seek prospective relief against MADDD | 23 |
| POINT VI — THE SEVENTH AND EIGHTH CAUSES OF ACTION (TRESPASS TO CHATTELS; ASSAULT AND BATTERY) FAIL AS AGAINST MADDD | 23 |
| POINT VII — THE CLASS ALLEGATIONS AND THE DEMANDS FOR RELIEF CANNOT PROCEED AGAINST MADDD | 24 |
| A. The Class Plaintiffs' representation and proposed class counsel must satisfy Rules 11 and 23 | 24 |
| B. The remaining demands for relief depend on claims that fail | 25 |
| POINT VIII — DISMISSAL AS AGAINST MADDD SHOULD BE WITH PREJUDICE | 26 |
| CONCLUSION | 26 |
| CERTIFICATE OF COMPLIANCE | 28 |

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
96 N.Y.2d 280 (2001) .......... 16, 18–19

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) .......... 11

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) .......... 6, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Bang v. Utopia Rest.*,
923 F. Supp. 46 (S.D.N.Y. 1996) .......... 9

*Bank v. Caribbean Cruise Line, Inc.*,
No. 12-CV-5572, 2014 WL 4258932 (E.D.N.Y. Aug. 27, 2014) .......... 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6, 24

*Betts v. Shearman*,
751 F.3d 78 (2d Cir. 2014) .......... 8, 10

*Blum v. Yaretsky*,
457 U.S. 991 (1982) .......... 10

*Burton v. Wilmington Parking Auth.*,
365 U.S. 715 (1961) .......... 11

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 6

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010) .......... 19–20

*Ciambriello v. County of Nassau*,
292 F.3d 307 (2d Cir. 2002) .......... 8, 10

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 23

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)........................................................................................ 26

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
70 N.Y.2d 382 (1987) ................................................................................................ 19

*Concerned Citizens of Forest Hills, Inc. v. W. Side Tennis Club*,
250 A.D.3d 879, 2026 N.Y. Slip Op. 03775 (2d Dep't June 17, 2026)................................ 16–17

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ................................................................................................ 15

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000).......................................................................................... 26

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)...................................................................................................... 6

*Dormitory Auth. v. Samson Constr. Co.*,
30 N.Y.3d 704 (2018) ................................................................................................ 20

*Evans v. Newton*,
382 U.S. 296 (1966).................................................................................................... 12

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006).......................................................................................... 6

*Flagg Bros., Inc. v. Brooks*,
436 U.S. 149 (1978)............................................................................................. 11–12

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
66 N.Y.2d 38 (1985) .................................................................................................. 20

*Georgia Malone & Co., Inc. v. Rieder*,
19 N.Y.3d 511 (2012) ........................................................................................... 14–15

*Ghartey v. St. John's Queens Hosp.*,
869 F.2d 160 (2d Cir. 1989).......................................................................................... 6

*Ginsberg v. Healey Car & Truck Leasing, Inc.*,
189 F.3d 268 (2d Cir. 1999)...................................................................................... 8–9

*Gonzalez v. Hasty*,
802 F.3d 212 (2d Cir. 2015)........................................................................................ 14

*Grunewald v. Metropolitan Museum of Art*,
125 A.D.3d 438 (1st Dep't 2015) .................... 20

*Guiducci v. Kohl's Dep't Stores*,
320 F. Supp. 2d 35 (E.D.N.Y. 2004) .................... 9

*H.R. Moch Co. v. Rensselaer Water Co.*,
247 N.Y. 160 (1928) .................... 20

*Iannaccone v. Law*,
142 F.3d 553 (2d Cir. 1998) .................... 24

*In re Joint E. & S. Dist. Asbestos Litig.*,
14 F.3d 726 (2d Cir. 1993) .................... 19

*India.com, Inc. v. Dalal*,
412 F.3d 315 (2d Cir. 2005) .................... 21

*Ingrami v. Rovner*,
45 A.D.3d 806 (2d Dep't 2007) .................... 16

*Jackie's Enters., Inc. v. Belleville*,
165 A.D.3d 1567 (3d Dep't 2018) .................... 23

*Jaffe v. Capital One Bank*,
No. 09 Civ. 4106, 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) .................... 25

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) .................... 26

*Lucchesi v. Perfetto*,
72 A.D.3d 909 (2d Dep't 2010) .................... 19

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982) .................... 11

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012) .................... 6–7

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y.3d 173 (2011) .................... 14

*Manhattan Cmty. Access Corp. v. Halleck*,
587 U.S. 802 (2019) .................... 11–12

*Matter of Agoglia v. Benepe*,
84 A.D.3d 1072 (2d Dep't 2011) ..... 16

*Matter of Glick v. Harvey*,
25 N.Y.3d 1175 (2015) ..... 22

*Maya NY, LLC v. Hagler*,
106 A.D.3d 583 (1st Dep't 2013) ..... 16

*Mendel v. Henry Phipps Plaza W., Inc.*,
6 N.Y.3d 783 (2006) ..... 21

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
898 F.3d 243 (2d Cir. 2018) ..... 25

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) ..... 14

*Owens v. Okure*,
488 U.S. 235 (1989) ..... 14

*Palazzo v. Palazzo*,
121 A.D.2d 261 (1st Dep't 1986) ..... 15

*Pearl v. City of Long Beach*,
296 F.3d 76 (2d Cir. 2002) ..... 14

*People v. Sturm, Ruger & Co.*,
309 A.D.2d 91 (1st Dep't 2003) ..... 17

*Premium Mortg. Corp. v. Equifax, Inc.*,
583 F.3d 103 (2d Cir. 2009) ..... 20

*Rajamin v. Deutsche Bank Nat'l Tr. Co.*,
757 F.3d 79 (2d Cir. 2014) ..... 21

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982) ..... 11

*Rice v. City of New York*,
275 F. Supp. 3d 395 (E.D.N.Y. 2017) ..... 9

*Riviello v. Waldron*,
47 N.Y.2d 297 (1979) ..... 23

*Rocanova v. Equitable Life Assur. Soc'y*,
83 N.Y.2d 603 (1994) .......... 25

*Rojas v. Alexander's Dep't Store, Inc.*,
924 F.2d 406 (2d Cir. 1990) .......... 13

*Salmon v. Blesser*,
802 F.3d 249 (2d Cir. 2015) .......... 12

*Shain v. Ellison*,
356 F.3d 211 (2d Cir. 2004) .......... 23

*Sheppard v. Beerman*,
18 F.3d 147 (2d Cir. 1994) .......... 12

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) .......... 19

*SM Kids, LLC v. Google LLC*,
963 F.3d 206 (2d Cir. 2020) .......... 21

*Sperry v. Crompton Corp.*,
8 N.Y.3d 204 (2007) .......... 15

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 15

*Sybalski v. Indep. Grp. Home Living Program, Inc.*,
546 F.3d 255 (2d Cir. 2008) .......... 10, 12

*Tracy v. Freshwater*,
623 F.3d 90 (2d Cir. 2010) .......... 25

*Wall St. Garage Parking Corp. v. N.Y. Stock Exch., Inc.*,
10 A.D.3d 223 (1st Dep't 2004) .......... 17

*Williams v. Town of Greenburgh*,
535 F.3d 71 (2d Cir. 2008) .......... 12

**Statutes**

28 U.S.C. § 1654 .......... 24
28 U.S.C. § 2201 .......... 19
42 U.S.C. § 1983 .......... 8–9, 13–14
42 U.S.C. § 1988 .......... 25
N.Y. C.P.L.R. 214 .......... 19
N.Y. C.P.L.R. 3001 .......... 19

N.Y.C. Admin. Code §§ 25-317, 25-317.1 .......................................................................... 22

Rules

Fed. R. Civ. P. 8 .......................................................................................................... 24
Fed. R. Civ. P. 11(a) ..................................................................................................... 24
Fed. R. Civ. P. 12(b)(1)..................................................................................... 6, 23, 26
Fed. R. Civ. P. 12(b)(6)............................................................................................. 6, 26
Fed. R. Civ. P. 15 .......................................................................................................... 25
Fed. R. Civ. P. 23 .................................................................................................... 24–25
Local Civil Rule 1.3 ....................................................................................................... 25

## PRELIMINARY STATEMENT

The First Amended Complaint (ECF No. 24, the "FAC") tells the story of an event venue that sold a City-owned plaza to its clients as a "private garden," a venue operator's chairman who called the plaza "my property," security guards in the venue's uniforms, and police officers who made an arrest. However, Defendant MADDD 550 Broad LLC ("MADDD") is none of them as MADDD is merely the City's *ground tenant*. MADDD is not alleged to operate the venue or to employ the chairman, and the only persons the FAC specifically ties to MADDD are not alleged to have arrested, struck, or taken the property of anyone.

Plaintiffs have now pleaded twice, the second time with MADDD's first motion to dismiss in hand. What the FAC attributes to MADDD, in nearly every instance "upon information and belief" and with the concession that the facts "will be determined through discovery," is that MADDD has held the ground lease since 2020; persons *believed* to work for it asked one plaintiff, Sean Basinski, not to exercise on the plaza in 2020, asked him to leave and called the police in April 2026, and told him he could not film there in August 2026; MADDD is presumed, from its lease covenants alone, to have "maintained" planters, trellises and signs installed beginning in 2000; and MADDD collects rent. FAC ¶¶ 10, 50–52, 54, 62, 66, 68, 77. The three plaintiffs who sue for a class allege no dealings with anyone identified with MADDD.

Accepting all of that as true, the FAC states no claim against MADDD. A private party that asks a visitor to leave and calls the police does not, without more, act under color of state law, and a tenant of City land does not become a state actor merely by signing a lease, least of all a lease whose terms the FAC says the tenant violated. The one police encounter that followed a call attributed to MADDD ended in an order to leave, which, absent additional restraint, does not establish a Fourth Amendment seizure. A public nuisance is actionable by a private plaintiff only

for an injury different in kind from the public's; the class plaintiffs plead the public's injury by definition, and the injuries that set Basinski apart (thrown merchandise, a struck hand, an arrest) are pleaded as the acts of the chairman, a John Doe, and a police lieutenant. Plaintiffs conferred nothing on MADDD, so there is nothing to restore to them. The lease on which the declaratory count rests provides that "[t]here are no third party beneficiaries of this Lease, either express or implied, except as may be provided herein." And the one man the FAC ties to MADDD on the day Basinski was struck is, in the FAC's words, "another employee," who is not specifically identified as the John Doe who struck him.

This motion does not ask the Court to decide whether the plaza is "public." MADDD's own lease calls for "a sitting area accessible to the public" on the plaza, and nothing here asks the Court to hold otherwise or to dismiss a claim against any other defendant. The question is narrower, namely, whether these Plaintiffs have pleaded facts that make this defendant liable on each claim asserted against it, which Movant asserts they have not and because Plaintiffs have already amended in response to a motion identifying these defects and the principal defects are legal rather than factual, dismissal as against MADDD should be with prejudice.

## STATEMENT OF FACTS

### A. The parties and the procedural history

Plaintiffs commenced this action in Supreme Court, New York County, on August 24, 2026. MADDD removed it on September 8, 2026, ECF No. 1, and moved to dismiss on September 29, 2026, ECF No. 18. Plaintiffs responded by filing the FAC on October 19, 2026. ECF No. 24.

Plaintiffs Rosenthal, Khan and Ciavolino (the "Class Plaintiffs") sue on behalf of "all members of the public who have been excluded from the outdoor public space in front of 409 East 59th Street" (the "Plaza") "as a result of Defendants' actions and by virtue of not being guests,

invitees or staff at events held in the adjacent event space, Guastavino's." FAC ¶¶ 1–3, 18. Plaintiff Basinski sues individually and disclaims membership in the class. *Id.* ¶¶ 4, 21. He alone signed the FAC. *Id.* at 28.

The City owns the block. *Id.* ¶ 25. Defendant Bridgemarket Associates, L.P. ("Bridgemarket") held the ground lease from 1986, and MADDD "acquired the aforementioned lease from Defendant Bridgemarket Associates in 2020." *Id.* ¶¶ 9–10, 30, 50. Defendant Guastavino's Inc. is a "private event venue under the arches of the Queensboro Bridge"; Defendant Rose Group Park Avenue LLC ("Rose Group") "operates and manages events at Guastavino's"; and Defendant Louis Rose is Rose Group's chairman. *Id.* ¶¶ 5–7. The FAC groups Guastavino's, Rose Group, Bridgemarket and MADDD as "the Corporate Defendants." *Id.* ¶ 8.

**B. The Lease**

The operative lease is the Third Amended and Restated Lease between the City and MADDD, dated as of April 1, 2025 (the "Lease"), which the FAC quotes and relies on. FAC ¶¶ 49, 51–52; Declaration of Gary Rosen ("Rosen Decl.") Ex. B. The Lease recites that the City leased the premises so that they "might be developed as a job producing commercial facility." Lease, Recitals. It required the tenant to construct, "on the parcel of land to the south of the Arch Space (the 'Plaza'), a sitting area accessible to the public." *Id.* § 9.01. It obligates the tenant to clean the Plaza twice daily, to "provide adequate 24-hour security on the Plaza and interior," and to "protect the landmark nature of the Bridge and Plaza," and it subjects certain alterations of "any plazas [or] open space" to the Landlord's approval. *Id.* §§ 8.01(a)(vii), 8.01(c), 9.03, 12.01–12.02. The FAC characterizes these provisions as an "obligation to maintain the Plaza for public use." FAC ¶ 51.

The Lease also provides that its covenants "bind and inure to the benefit of Landlord and Tenant and their respective successors and . . . assigns," and that "[t]here are no third party

beneficiaries of this Lease, either express or implied, except as may be provided herein." Lease §§ 41.13, 41.20.

**C. What the FAC alleges against MADDD**

The FAC attributes the commercial use of the Plaza to others. It alleges that, "[b]eginning in or around 2006," Guastavino's and Rose Group marketed the Plaza as their "private garden," sold "exclusive access" to it, and closed it to the public with "stanchions" and "security guards." FAC ¶¶ 44, 47. It attributes the resulting profits to them. *Id.* ¶ 76. Further, it alleges that "dozens and perhaps hundreds of people use the Plaza daily when the Corporate Defendants are not holding events there." *Id.* ¶ 19.

As to MADDD, the FAC alleges the following, each "upon information and belief":

(1) In the summer of 2020, an employee of "either Bridgemarket Associates or MADDD 550 Broad (whichever company held the ground lease with the City at the time)," or of a security contractor, told Basinski that he could not exercise on the Plaza. *Id.* ¶ 54.

(2) On December 3, 2025, Rose threw Basinski's merchandise toward the street, "John Doe #1" struck Basinski's hand, Basinski called 911, and Lieutenant Tai arrested him. *Id.* ¶ 61. Rose introduced "another employee" to the police as "the building manager from the entire ground floor lease." *Id.* ¶ 62. The FAC infers that this man worked for MADDD. It does not allege that he said or did anything. *Id.*

(3) On April 17, 2026, "the same man" asked Basinski, who was reading a book, to leave "and then called the NYPD." *Id.* ¶ 66. The man allegedly spoke to Officers Canas and Guzman upon their arrival. Those officers told Basinski to leave "because it was private property"; Officer Canas said that "she knew it was private property because she was from the 19th Precinct and was

familiar with the location because she went there 'very often.'" *Id.* Officers "escorted" Basinski from the Plaza, and one told him he would be arrested if he returned. *Id.*

(4) On August 11, 2026, a guard told Basinski that he could not record a video on the Plaza "because it was private property." *Id.* ¶ 68.

(5) Because the ground lease required the tenant "to control, manage and maintain the Plaza," the FAC infers that planters, trellises, lights and signs installed "[b]eginning in 2000" were "executed and maintained by Bridgemarket Associates and MADDD 550 Broad during their respective tenures." *Id.* ¶¶ 48, 52. Some signs read "PRIVATE GARDEN – Available to the public at the discretion of Bridgemarket Associates." *Id.* ¶ 48(g).

Each attribution is coupled with the concession that the actor's identity and employer "will be determined through discovery." *Id.* ¶¶ 52, 54, 62, 66, 68. MADDD accepts the first four as pleaded for purposes of this motion; the fifth is an inference, addressed in Point IV.C.[1]

The Class Plaintiffs allege no contact with anyone identified with MADDD. Khan was asked to leave "in or around 2015," five years before MADDD acquired the lease. *Id.* ¶¶ 10, 53. Rosenthal was asked to leave once, in the summer of 2025, by "an employee of the Corporate Defendants." *Id.* ¶ 60. Ciavolino was "denied access" on about five occasions after February 2025 "by the Corporate Defendants, who placed barricades." *Id.* ¶ 58. None alleges any involvement of the police.

The remaining encounters, and the two remarks from which the FAC infers an "arrangement" with the police (that the NYPD "understands . . . what the arrangement is" and "I

---

[1] The attributions rest on inferences from, among other things, attire, the office a person was seen leaving, and a remark by a different defendant. FAC ¶¶ 54, 62, 66, 68. MADDD does not ask the Court to weigh those inferences. Any request for further amendment should identify additional facts capable of curing the defects found by the Court. *See* Point VIII, *infra*.

know the police"), are attributed to employees of Guastavino's or Rose Group. *Id.* ¶¶ 55–57, 59, 64–65. Finally, the FAC alleges "[u]pon information and belief" that Bridgemarket and MADDD "did profit" from their tenants' use of the Plaza through rent or other means. *Id.* ¶ 77.

## LEGAL STANDARD

A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). The inquiry is defendant-specific as the pleading must plausibly connect each defendant to the alleged misconduct. *Iqbal*, 556 U.S. at 676, 678. Allegations on information and belief are permitted where the facts are "peculiarly within the possession and control of the defendant" or the belief rests on "factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), but they cannot supply elements that the alleged facts, once credited, do not satisfy.

The Court may consider documents incorporated in or integral to the complaint, including a contract that the complaint quotes and relies on. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The FAC quotes the Lease and rests its theory of MADDD's obligations on it, FAC ¶¶ 49, 51–52, so the Court may consider the Lease, including § 41.20, absent a genuine dispute about authenticity, accuracy, or relevance. See *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). A limitations defense may be decided under Rule 12(b)(6) where it appears on the face of the complaint. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). Standing is addressed under Rule 12(b)(1) and must be shown for each claim, for each form of relief, and as to each defendant. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352–53 (2006); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62–65 (2d Cir. 2012).

## ARGUMENT

Each claim must be measured against what the FAC pleads that MADDD did. The FAC defines "Corporate Defendants" to include a former ground tenant, the current ground tenant, and two event businesses, and then pleads the exclusionary "policy or practice," the Class Plaintiffs' exclusions, the "arrangement" with the police, and the ratification of John Doe's conduct against all four at once. FAC ¶¶ 8, 21, 24, 53, 58, 60, 84–85, 90. Those collective allegations must be evaluated with the specific ones summarized above, particularly where the FAC names the responsible actor for nearly every event and the actor it names is almost never MADDD.

### POINT I — THE CLASS PLAINTIFFS PLEAD NOTHING AGAINST MADDD

Rosenthal, Khan and Ciavolino are the only plaintiffs who sue for a class and *none* of them allege a fact specific to MADDD.

Khan was asked to leave once, "in or around *2015*." FAC ¶ 53. However, MADDD acquired the ground lease in *2020*. *Id.* ¶¶ 10, 50. An injury that *predates* the defendant's connection to the property is not "fairly traceable" to that defendant, *Mahon*, 683 F.3d at 62. Khan adds that he now "sees [the Plaza] barricaded"; Rosenthal alleges that "an employee of the Corporate Defendants" once told him "the Plaza was closed," and Ciavolino that "the Corporate Defendants . . . placed barricades." FAC ¶¶ 53, 58, 60. Those collective or unattributed allegations do not, without more, identify MADDD's own conduct, and the FAC's own specifics point away from MADDD: it attributes the "stanchions" and entrance guards to Guastavino's and Rose Group, *id.* ¶ 47, and it defines the class by exclusion on account of "not being guests, invitees or staff at events held in the adjacent event space, Guastavino's," *id.* ¶ 18.

Their claims also fail for the reasons below as none of them plausibly connects MADDD to action under color of law (Point II). None conferred anything on MADDD (Point III). Each pleads only the injury common to the public, which is not actionable in nuisance (Point IV.A).

None may enforce the Lease, and none has standing to seek prospective relief against MADDD (Point V). Their representation and any omitted signatures also require clarification (Point VII.A). The class allegations fall, as against MADDD, with the Class Plaintiffs' claims.

## POINT II — THE SIXTH CAUSE OF ACTION (42 U.S.C. § 1983) FAILS AS AGAINST MADDD

Section 1983 reaches only conduct "under color of" state law. The Sixth Cause of Action concedes that MADDD is a "private actor[]" and alleges that it nonetheless acted under color of law "by acting jointly and in concert with the City." FAC ¶ 84. The FAC pleads no facts supporting that conclusion as to MADDD, no deprivation of a federal right resulting from anything MADDD is alleged to have done, and no MADDD policy.

### A. Asking a visitor to leave and calling the police does not, without more, establish joint action

Under a joint-action theory, a private party acts under color of state law when it "is a willful participant in joint activity with the State or its agents." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quotation omitted). The two must "share some common goal to violate the plaintiff's rights," *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014), and "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice," *Ciambriello*, 292 F.3d at 324. The Second Circuit has applied these rules to private parties who called the police. In *Ginsberg v. Healey Car & Truck Leasing, Inc.*, decided on summary judgment, a business that summoned an officer and gave him its side of a dispute was not a state actor, holding that "provision of background information to a police officer does not by itself make [a private party] a joint participant in state action," and "[w]here . . . a police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct." 189 F.3d 268, 272 (2d Cir. 1999). In *Betts*, the

same was true of a complainant whose allegedly false accusation led to an arrest. 751 F.3d at 85–86. *Guiducci v. Kohl's Dep't Stores* likewise dismissed a claim against private store security personnel. 320 F. Supp. 2d 35, 37–38 (E.D.N.Y. 2004). By contrast, *Bang v. Utopia Rest.* allowed a joint-action claim where a conversation with the owner supported an inference of a shared unlawful goal. 923 F. Supp. 46, 49–50 (S.D.N.Y. 1996). See also *Rice v. City of New York*, 275 F. Supp. 3d 395, 404 (E.D.N.Y. 2017) ("calling the police, even for an improper purpose, does not create private liability under § 1983").

That is all the FAC pleads as to MADDD. On April 17, 2026, a man believed to be MADDD's building manager "requested Basinski leave, and then called the NYPD," and "spoke to" the responding officers. FAC ¶ 66. The FAC does not allege what he said. It does allege why the officers acted: Officer Canas "knew it was private property because she was from the 19th Precinct and was familiar with the location because she went there 'very often,'" and she told Basinski, "I don't need paperwork." *Id.* Those allegations describe the officer invoking her own knowledge; they do not by themselves establish a shared unlawful plan with MADDD. Indeed, the FAC alleges that the City itself has been "falsely claiming the space is private property." FAC at 2. The officers' remarks that "they don't want you here" and "they had issues with you in the past," *id.* ¶ 66, report a private request. They do not plead a plan or a shared unlawful goal. *See Ginsberg*, 189 F.3d at 272 (no joint action where officer did not act "pursuant to any agreement or plan with" the business). Nor does the FAC allege that any MADDD employee held the powers of a special patrolman or exercised any authority conferred by the State.

The December 3, 2025 arrest is further removed. The police came because Basinski called 911. FAC ¶ 61. Basinski "explained to the officers" his view of the Plaza's status and offered evidence, and Lieutenant Tai, "[i]nsisting that the Plaza was private space," arrested him. *Id.* The

man the FAC associates with MADDD is alleged only to have been introduced to the police by Rose. He is not alleged to have spoken to an officer, requested an arrest, or touched anyone. *Id.* ¶ 62. The August 11, 2026 encounter involved no police at all. *Id.* ¶ 68.

What remains is collective and conclusory. The FAC alleges that "[t]he Corporate Defendants and Rose" had "an arrangement" with the 19th Precinct and, "over the course of years, falsely and fraudulently inform[ed]" it that the Plaza was private. *Id.* ¶¶ 82, 84–85. Apart from the April 17 call, it identifies no MADDD speaker, statement, date or officer. The only facts offered for an "arrangement" are two remarks by persons the FAC itself places with Guastavino's or Rose Group. *Id.* ¶¶ 55, 64. *Betts* holds that an allegedly false report leading to an arrest does not, standing alone, make the reporter a state actor. 751 F.3d at 85–86. The same deficiencies defeat any conspiracy theory, which requires a specifically pleaded agreement between the private party and a state actor to inflict an unconstitutional injury. *Ciambriello*, 292 F.3d at 324–25.

**B. A lease of City land does not alone make the tenant a state actor**

Nor is MADDD a state actor because its landlord is the City, which is Landlord "only in its proprietary capacity, and not its governmental capacity." Lease Art. 1(ccc). State action requires that the State be "responsible for the specific conduct of which the plaintiff complains," *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); it must be involved "with the activity that caused the injury," not merely with the entity, *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257–58 (2d Cir. 2008) (quotation omitted). The FAC pleads no City compulsion or encouragement of any exclusion by MADDD. It pleads that the City "assisted in, acquiesced in, or failed to correct" a private practice, FAC ¶ 24, and "[m]ere approval of or acquiescence in the initiatives of a private party" is not state action. *Blum*, 457 U.S. at 1004–05. That the City "actively participates" "upon request of the companies," FAC at 2, is the joint-action theory answered in Point II.A.

Indeed, the FAC's theory is that the City required the opposite. It alleges that the Lease "requires" MADDD to maintain "a sitting area accessible to the public" and that the changes to the Plaza "were made in violation of the Corporate Defendants' leases with the City." FAC ¶¶ 49, 51. *Lugar* distinguished a private misuse of state attachment procedures from a challenge to the procedures themselves, explaining that the former "challenges only private action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940–41 (1982). A lease violation alone likewise does not establish state action; the separate joint-action theory must still be tested on its pleaded facts.

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), does not hold otherwise as, there, a public authority leased space in its parking garage to a restaurant that refused to serve Black customers. The authority "could have affirmatively required" its lessee to comply with the Fourteenth Amendment, did not, and so "elected to place its power, property and prestige behind the admitted discrimination," from which it profited. *Id.* at 724–25. The Court limited its holding to a State that "leases public property in the manner and for the purpose shown" there. *Id.* at 726. It has since explained that "later cases have refined the vague 'joint participation' test embodied in" *Burton*. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 57 (1999), and that *Burton* turned on the fact that "the State profited from the restaurant's discriminatory conduct," *Rendell-Baker v. Kohn*, 457 U.S. 830, 843 (1982). The FAC pleads the reverse on each point: the City's Lease requires public access, the alleged exclusions violate it, and the City issued no permits for the events on the Plaza and "received no fee" for the 2026 film shoot there. FAC ¶¶ 49, 51, 67; *id.* at 12 (second ¶ 44).

Finally, maintaining a sitting area as an amenity of a commercial development does not by itself establish performance of a function "traditionally and exclusively" performed by government. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019); *Flagg Bros.,*

*Inc. v. Brooks*, 436 U.S. 149, 157–58 (1978); *Sybalski*, 546 F.3d at 259–60. *Halleck* also relied on the City's lack of a property interest, so it does not resolve this City-owned Plaza's status. *Halleck*, 587 U.S. at 816–18. *Evans v. Newton*, 382 U.S. 296, 301–02 (1966), concerned an established municipal park; the issue here remains whether MADDD's challenged conduct is fairly attributable to the City. The Plaza is pleaded as an improvement built by a private developer as "an amenity for the neighborhood" and maintained by the ground tenant, FAC ¶¶ 28, 32, 41, 51–52, and the Lease covenant to "provide adequate 24-hour security" requires security, not the exclusion of anyone; it is a tenant's promise to its landlord, not a delegation of the police power.

**C. The alleged escort does not establish a Fourth Amendment seizure**

Even if state action were pleaded, the April 17 allegations do not establish a Fourth Amendment seizure. The one police encounter that followed a call attributed to MADDD ended with officers ordering Basinski to leave, on threat of arrest, and escorting him out. FAC ¶¶ 66, 80. Without alleged restraint beyond an order and escort to leave, while remaining free to go elsewhere, that does not plead a seizure. "Police officers frequently order persons to leave public areas," and the Second Circuit "does not view such police conduct, without more, as a seizure under the Fourth Amendment as long as the person is otherwise free to go where he wishes." *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015); *Salmon allowed the Fourth Amendment claim where painful physical force controlled the plaintiff's movements, a distinction the FAC does not allege for this encounter. Id. at 254. See Sheppard v. Beerman*, 18 F.3d 147, 153 (2d Cir. 1994) (clerk ordered out of chambers and escorted from courthouse was not seized). Nor does the Fourteenth Amendment's protection of free movement provide "a substantive right to cross a particular parcel of land, enter a chosen dwelling, or gain admittance to a specific government building." *Williams v. Town of Greenburgh*, 535 F.3d 71, 75–76 (2d Cir. 2008). The absence of a

seizure does not itself defeat a distinct First Amendment access claim. The filming encounter attributed to MADDD on August 11, 2026 involved no police; the separate state-action and entity-policy requirements remain necessary. FAC ¶¶ 66, 68. Whether the December 2025 arrest was lawful is a question for the officers who made it.

**<u>D. The FAC pleads no MADDD policy or custom</u>**

Finally, a private entity is not vicariously liable under § 1983; Plaintiffs must plausibly plead its own policy or custom causing the constitutional injury. "Private employers are not liable under [§] 1983 for the constitutional torts of their employees . . . unless the plaintiff proves that 'action pursuant to official . . . policy of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (citations omitted). Respondeat superior is the FAC's theory in so many words: an unidentified man "was employed by MADDD 550 Broad, or by a security contractor retained by them, and was acting within the scope of that employment or agency." FAC ¶¶ 66, 68; see *id.* ¶ 62. The collective policy allegation, that "the Corporate Defendants maintained and enforced a common policy or practice of treating the Plaza as private property," *id.* ¶ 24, is a label applied to four companies. The practice the FAC actually describes, selling the Plaza as a "private garden" and closing it to those not attending the venue's events, is attributed to Guastavino's and Rose Group, *id.* ¶¶ 44, 47, and the FAC concedes that when no event is under way "dozens and perhaps hundreds of people use the Plaza daily," *id.* ¶ 19. Three requests to one man over six years (not to exercise, to leave, and not to film) do not plead a MADDD policy of excluding the public.

**E. The Class Plaintiffs plead no sufficient MADDD-specific state action; earlier discrete damages claims are subject to limitations**

The Class Plaintiffs plead no police involvement in their encounters, FAC ¶¶ 53, 58, 60, and do not otherwise plausibly connect MADDD to state action for the reasons above. § 1983 claims arising in New York are subject to a three-year limitations period. *Owens v. Okure*, 488 U.S. 235, 249–51 (1989); *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Measured from the commencement of this action on August 24, 2026, Basinski's encounters in 2020 and on March 31 and June 7, 2023 are untimely absent tolling. Khan's 2015 exclusion is subject to any applicable infancy toll, which cannot be resolved without his birth date. FAC ¶¶ 53–56. Each was a discrete act, complete when it occurred, that the continuing-violation doctrine does not revive. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002); *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).

**POINT III — THE THIRD CAUSE OF ACTION (UNJUST ENRICHMENT) FAILS AS AGAINST MADDD**

Unjust enrichment requires "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (brackets and internal quotation marks omitted). Privity is not required, but the relationship between the parties cannot be "too attenuated"; the pleading must show a connection "that could have caused reliance or inducement." *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516–17 (2012) (quotations omitted).

Paragraph 77 pleads none of this as it alleges "[u]pon information and belief" that MADDD "did profit" from its tenants' use of the Plaza through "rent, fees, revenue-sharing agreements or other contractual consideration," enhanced leasehold value, "the increased financial strength and

rent-paying capacity of the tenant, or some combination thereof." FAC ¶ 77. Even accepting those allegations of financial benefit as true, they do not identify enrichment at these Plaintiffs' expense or a sufficient relationship between Plaintiffs and MADDD.

More fundamentally, nothing on the list came from Plaintiffs. They allege that they were turned away from the Plaza. They do not allege that they paid anyone anything, that anything of theirs reached MADDD, or that MADDD induced them to do anything. Rent comes from a tenant. The Court of Appeals has rejected unjust-enrichment claims far less remote than this one. *Georgia Malone*, 19 N.Y.3d at 517–19 (relationship "too attenuated" where the parties "simply had no dealings with each other"); *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215–16 (2007) (connection between purchasers of tires and makers of chemicals used in making them "simply too attenuated"). The prayer for relief confirms the point. Plaintiffs do not ask that anything be restored to them; they ask that Defendants' revenues be paid into a "restoration fund dedicated to the preservation of public space in Midtown East." FAC Prayer ¶ 7. Restitution returns to a plaintiff what was taken from him. The FAC does not explain how that fund would redress these Plaintiffs' particular injuries. Compare *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106–07 (1998) (civil penalties payable to the Treasury would not redress the plaintiff's past injury). The accounting they demand requires a confidential or fiduciary relationship that is not alleged, *Palazzo v. Palazzo*, 121 A.D.2d 261, 265 (1st Dep't 1986).

The claim is also duplicative as unjust enrichment "is not a catchall cause of action to be used when others fail" and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). The "illegal use and commercial exploitation of the Plaza" alleged in paragraph 77 is the conduct pleaded as a nuisance in the Second Cause of Action. If that conduct is actionable, nuisance supplies the

remedy; if it is not, unjust enrichment does not fill the gap. Finally, because the claim seeks money on a theory of tortious conduct, it is subject to a three-year limitations period and could not reach any enrichment before August 24, 2023. *Ingrami v. Rovner*, 45 A.D.3d 806, 808 (2d Dep't 2007); *see Maya NY, LLC v. Hagler*, 106 A.D.3d 583, 585 (1st Dep't 2013) (distinguishing unjust-enrichment claims "stemming from tortious conduct," to which the three-year period applies).

## POINT IV — THE SECOND CAUSE OF ACTION (PUBLIC NUISANCE) FAILS AS AGAINST MADDD

A public nuisance "is a violation against the State and is subject to abatement or prosecution by the proper governmental authority." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001). It "is actionable by a private person only if it is shown that the person suffered special injury beyond that suffered by the community at large," a rule that guards "against the multiplicity of lawsuits that would follow if everyone were permitted to seek redress for a wrong common to the public." *Id.* The injury "must be different in kind than that suffered by the entire community, not simply different in degree." *Concerned Citizens of Forest Hills, Inc. v. W. Side Tennis Club*, 250 A.D.3d 879, 882, 2026 N.Y. Slip Op. 03775 (2d Dep't June 17, 2026) (quoting *Matter of Agoglia v. Benepe*, 84 A.D.3d 1072, 1077 (2d Dep't 2011)). Here the proper governmental authority is before the Court: the City owns the Plaza, is MADDD's landlord, and holds every right of enforcement the Lease provides.

### A. The Class Plaintiffs plead only the injury common to the public

The Class Plaintiffs plead the public's injury and nothing else. Their class is "all members of the public who have been excluded" from the Plaza, FAC ¶ 18, and their own injury is that, "[l]ike other members of the class, they were deterred from using the plaza, denied entry, or asked to leave," *id.* ¶ 21. That is, by definition, harm "common to an entire community." *532 Madison*,

96 N.Y.2d at 294 (quotation omitted). Aggregating the common injury through a class action does not supply the representatives' missing special injury.

New York courts apply the rule to the obstruction of public places. In *Wall Street Garage Parking Corp. v. New York Stock Exchange, Inc.*, a parking garage that lost business when a private entity's security perimeter closed public streets could not obtain relief, because it "ha[d] not demonstrated a special injury beyond the disruption experienced by the community as a whole." 10 A.D.3d 223, 228 (1st Dep't 2004) (reversing preliminary injunction). In *Concerned Citizens*, the individual plaintiffs complaining of stadium noise failed to plead an injury different in kind from their community's. 250 A.D.3d at 882. The Second Cause of Action must be dismissed as to the Class Plaintiffs.

**B. Basinski pleads no special injury caused by MADDD**

Basinski alleges that he "lives less than a block away" and that his property was thrown into the street and he was assaulted, arrested, told not to return, and threatened with arrest. FAC ¶ 74. Proximity is not special injury. *Concerned Citizens*, 2026 N.Y. Slip Op. 03775. The injuries that are different in kind (the thrown property, the struck hand, the arrest) are pleaded as the acts of Rose, John Doe #1 and Lieutenant Tai, FAC ¶¶ 61, 79, 87, 89, and are the subject of separate causes of action against them. They were not caused by a planter, a trellis or a sign. In a materially different gun-distribution case, the First Department rejected nuisance liability where lawful commercial conduct was "followed by harm to person and property caused directly and principally by the criminal activity of intervening third parties." *People v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 103 (1st Dep't 2003). That holding does not categorically foreclose liability for foreseeable or authorized third-party acts. The defect here is the absence of facts plausibly connecting MADDD to the particular acts causing Basinski's distinct injuries. FAC ¶¶ 74, 87, 89.

What the FAC attributes to MADDD's own personnel is different: a request not to exercise, a request to leave followed by a call to the police, and a statement that Basinski could not film. *Id.* ¶¶ 54, 66, 68. Each is an exclusion from the Plaza or a limit on its use, which is the injury the FAC pleads for the public at large. That Basinski alleges it more often than others, or that officers told him on April 17 not to return, makes his injury greater in degree, not different in kind. *532 Madison*, 96 N.Y.2d at 294.

**C. The FAC does not plausibly connect MADDD to creation or maintenance of the nuisance**

The FAC alleges that MADDD maintained the challenged conditions, but its stated basis for that inference requires scrutiny. The conduct it identifies as the interference with the public's use (selling "exclusive access," posting guards and stanchions, closing the Plaza to those not attending the venue's events) is attributed to Guastavino's and Rose Group, "[b]eginning in or around 2006." FAC ¶¶ 44, 47, 67, 76. The physical changes are dated "[b]eginning in 2000," twenty years before MADDD's tenancy, and one of the two signs the FAC quotes announces that the garden is available "at the discretion of Bridgemarket Associates." *Id.* ¶¶ 48, 50. The FAC identifies nothing that MADDD installed. It alleges generally that the changes "were executed and maintained by Bridgemarket Associates and MADDD 550 Broad during their respective tenures," and it offers a single basis for that belief: "the fact that the ground lease . . . required" the tenant "to control, manage and maintain the Plaza." *Id.* ¶ 52. It concedes that "dozens and perhaps hundreds of people use the Plaza daily when the Corporate Defendants are not holding events there." *Id.* ¶ 19. MADDD submits that the lease obligation, without further facts connecting it to the operators' event exclusions, does not plausibly establish its own creation or maintenance of the actionable interference.

A covenant in MADDD's Lease is a duty owed to the City, and "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987). A lease covenant alone therefore does not supply the independent tort duty. An adequately pleaded public nuisance could, however, rest on an independent public right notwithstanding the contractual restriction. Furthermore, the items themselves (planters, trellises, vines and string lights said to "narrow[]" an entrance and "visually enclos[e]" the space, and the removal of benches, without Landmarks Commission approval, FAC ¶ 48(b)–(f)) require a plausible connection to MADDD and to a "substantial interference with the exercise of a common right of the public." *532 Madison*, 96 N.Y.2d at 292.

**D. Damages for incidents before August 24, 2023 are time-barred**

Damages for a continuing nuisance are recoverable only for the three years preceding the action. CPLR 214; *Lucchesi v. Perfetto*, 72 A.D.3d 909 (2d Dep't 2010). Basinski's encounters in 2020 and in March and June 2023 fall outside that period absent tolling. Khan's *2015* exclusion is subject to any applicable infancy toll. FAC ¶¶ 53–56.

**POINT V — THE FIRST CAUSE OF ACTION (DECLARATORY JUDGMENT) FAILS AS AGAINST MADDD**

**A. A declaration is a remedy that requires a claim**

The First Cause of Action is pleaded under CPLR 3001. FAC at 22. In this Court the Declaratory Judgment Act, 28 U.S.C. § 2201, governs, and the Act does not "provide an independent cause of action. Its operation is procedural only." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). "Declaratory judgments and injunctions are remedies, not causes of action." *Chiste v.*

*Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010). A declaration against MADDD therefore requires a substantive right enforceable against MADDD, although that right need not be pleaded as a separate coercive cause of action. MADDD submits that the FAC identifies no such right for these Plaintiffs (Points II–IV, V.B–C, VI).

**B. Plaintiffs cannot enforce the City's Lease**

Stripped of its label, the First Cause of Action asks the Court to construe and enforce the City's Lease. The FAC alleges that the Lease "requires" MADDD to maintain "a sitting area accessible to the public," that MADDD's covenants reflect an "obligation to maintain the Plaza for public use," and that the changes to the Plaza "were made in violation of the Corporate Defendants' leases with the City." FAC ¶¶ 49, 51. It asks for an injunction regulating MADDD's use of the Plaza and an order restoring the Plaza "to conform to plans submitted to and approved by the City." *Id.* Prayer ¶¶ 4–5.

However, Plaintiffs are *strangers* to that Lease. "A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[] an intent to permit enforcement by the third party' in question." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985)); *accord Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (2018). The rule applies with particular force to members of the public who benefit from a municipality's contract. *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 164–66 (1928). In *Grunewald v. Metropolitan Museum of Art*, museum visitors could not enforce an alleged free-admission term of the City's lease to the museum; a benefit to the public does not make each "member of the public a third party beneficiary." 125 A.D.3d 438, 439 (1st Dep't 2015). The rule is not avoided by asking for a declaration instead of damages: plaintiffs who

sought a declaratory judgment premised on the breach of agreements to which they were not parties, "as nonparties to those contracts, lack[ed] standing to assert any nonperformance of those contracts." *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 87–88 (2d Cir. 2014). That defect goes to the merits: contractual standing "does not implicate subject-matter jurisdiction" but "speaks to a party's right to relief." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020).

Here the Lease forecloses the claim in terms and its covenants "bind and inure to the benefit of Landlord and Tenant and their respective successors and . . . assigns," and "[t]here are no third party beneficiaries of this Lease, either express or implied, except as may be provided herein." Lease §§ 41.13, 41.20. "Under New York law, where a provision in a contract expressly negates enforcement by third parties, that provision is controlling." *India.com, Inc. v. Dalal*, 412 F.3d 315, 321–22 (2d Cir. 2005) (quotation omitted). In *India.com*, a contract that named a broker and provided for his fee did not make him a beneficiary in the face of such a clause. *Id.* at 321–22. A lease that describes a sitting area as "accessible to the public" no more makes each member of the public a party entitled to sue on it. *I*n *Mendel v. Henry Phipps Plaza West, Inc.*, tenants could not enforce the covenants of a City land-disposition agreement that "explicitly negate[d] any intent to permit its enforcement by third parties such as plaintiffs." 6 N.Y.3d 783, 786–87 (2006).

The FAC identifies no provision of the Lease that confers enforcement rights on Plaintiffs or the public as the Lease places enforcement elsewhere since the Landlord, through its Lease Administrator, holds the rights of inspection, entry, notice of default and termination; certain alterations to "any plazas [or] open space" require its approval; and community input is channeled through an Advisory Body of Community Boards 6 and 8. Lease §§ 1.02, 8.01(a)(viii),

8.01(c)(vii), 9.03, 11.10, 12.01–12.02, Art. 29. The Landlord is a party to this action. The FAC does not allege that it has ever declared a default.

**C. The FAC pleads no other right enforceable against MADDD**

A no-beneficiaries clause would not extinguish a right that exists independently of the Lease. The FAC pleads none that Plaintiffs may enforce against MADDD. It does not allege that the Plaza was mapped as parkland or dedicated by any legislative or other unequivocal act. It relies on a 1977 request for proposals, Landmarks and Art Commission approvals, a mayoral press release, a plaque, and preservation awards. FAC ¶¶ 28–42. An implied dedication requires acts and declarations of the owner that are "unmistakable in their purpose and decisive in their character," and *Glick* found no dedication where the City "permitted and encouraged some use" of its land "for recreational and park-like purposes" but "had no intention of permanently giving up control of the property." *Matter of Glick v. Harvey*, 25 N.Y.3d 1175, 1180–81 (2015) (quotation omitted). The FAC describes City land leased to a private tenant, for a term, as part of a commercial development; the City Council-approved resolution it cites described a "public plaza" in the course of "authorizing a new lease of the property." FAC ¶ 42. MADDD submits that these allegations establish a lease obligation enforceable by the City rather than an unequivocal permanent dedication. If the Court finds a plausible independent dedication theory, § 41.20 would not itself defeat that theory, and dismissal should be confined to the private contract-enforcement claim.

To the extent the FAC invokes the Landmarks Law, *id.* ¶¶ 33–34, 48–49, that law is enforced by the Landmarks Preservation Commission and the Corporation Counsel. N.Y.C. Admin. Code §§ 25-317, 25-317.1. To the extent the declaratory count is a vehicle for the public's right to be free of a nuisance, it is subject to the special-injury rule (Point IV). MADDD does not

ask the Court to decide the Plaza's status on this motion. The point is that the FAC pleads no right that these Plaintiffs may enforce against the City's tenant.

**D. The Class Plaintiffs lack standing to seek prospective relief against MADDD**

A plaintiff seeking prospective relief must show a "real and immediate threat" of future injury traceable to the defendant. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–05 (1983); *Shain v. Ellison*, 356 F.3d 211, 215–16 (2d Cir. 2004). The Class Plaintiffs allege deterrence, continuing barriers, and a desire to return. FAC ¶¶ 53, 58, 60. Those allegations must receive favorable inferences; an intention to return if exclusion ceases is not necessarily insufficient merely because it is conditional. MADDD's objection is the absence of facts connecting their threatened future exclusions to MADDD: Khan's identified encounter predates its tenancy, Rosenthal identifies only an employee of the Corporate Defendants, and Ciavolino attributes barricades to those defendants collectively. *Id.* ¶¶ 47, 53, 58, 60. To the extent those allegations do not plausibly trace a real and immediate threat to MADDD, their requests for prospective relief against it should be dismissed under Rule 12(b)(1).

**POINT VI — THE SEVENTH AND EIGHTH CAUSES OF ACTION (TRESPASS TO CHATTELS; ASSAULT AND BATTERY) FAIL AS AGAINST MADDD**

The Seventh Cause of Action is expressly pleaded against "Defendants Rose and John Doe #1." FAC ¶ 87. It identifies no act of dispossession by MADDD itself. Although *Jackie's Enters., Inc. v. Belleville*, 165 A.D.3d 1567, 1572–73 (3d Dep't 2018), addresses the injury required for trespass to chattels, this motion principally concerns the absence of a sufficient basis to attribute the pleaded interference to MADDD. The Eighth alleges that Doe struck Basinski's hand and acted within the scope of employment and in furtherance of the Corporate Defendants' business, or that

those defendants directed, authorized, ratified, or maintained the practices causing the contact. *FAC* ¶¶ 89–90. Those allegations require separate consideration as to MADDD.

Respondeat superior requires a basis to attribute the employee's conduct to the particular employer. *Riviello v. Waldron*, 47 N.Y.2d 297, 302–03 (1979). The FAC alleges Doe's employment by four companies "and/or" one another. FAC ¶ 8. Rule 8(d)(2) and (3) permit alternative and inconsistent allegations, and employment information may be within defendants' control. MADDD therefore challenges the plausibility of its alleged employment or ratification, rather than treating the alternative allegation as absent. See *Twombly*, 550 U.S. at 555–57; *Arista Records*, 604 F.3d at 120. Rose is the chairman of Rose Group; at least two guards wore Guastavino's uniforms; and "some of the employees" worked for Guastavino's or Rose Group. FAC ¶¶ 7, 62. The person specifically associated with MADDD is described as "another employee," without an allegation that he was Doe or touched Basinski or his property. *Id.* ¶ 62. MADDD submits that these circumstances, together with the collective allegation of direction or ratification, do not plausibly connect it to the alleged contact. The Seventh and Eighth Causes of Action should be dismissed as against MADDD on that basis.

**<u>POINT VII — THE CLASS ALLEGATIONS AND THE DEMANDS FOR RELIEF CANNOT PROCEED AGAINST MADDD</u>**

**A. The Class Plaintiffs' representation and proposed class counsel must satisfy Rules 11 and 23**

The FAC bears one signature, "/s/ Sean Basinski," without a designation as counsel. FAC at 28. Rule 11(a) requires a signature by an attorney of record or by each unrepresented party and permits prompt correction of an omitted signature. If Basinski signs solely for himself, he cannot represent the other Plaintiffs: "because pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d

Cir. 1998); 28 U.S.C. § 1654. The Court should clarify his capacity and require any necessary signatures or appearance of authorized counsel; the signature's form alone does not establish that he is unauthorized to represent them.

If Basinski acts as counsel, he must be admitted or otherwise authorized to practice before this Court. Local Civil Rule 1.3. A lawyer representing himself ordinarily receives no special pro se solicitude. *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). *Jaffe v. Capital One Bank*, No. 09 Civ. 4106, 2010 WL 691639, at *10–11 (S.D.N.Y. Mar. 1, 2010), and *Bank v. Caribbean Cruise Line, Inc.*, No. 12-CV-5572, 2014 WL 4258932 (E.D.N.Y. Aug. 27, 2014), address the conflict in serving as both class representative and class counsel. Basinski expressly disclaims class membership, FAC ¶ 21, so those decisions do not establish automatic disqualification here. His individual damages claims and role as a fact witness warrant examination of adequacy under Rule 23(g). Any representation defect should be resolved before certification; it does not itself establish a merits ground to dismiss the other Plaintiffs' individual claims.

**B. The remaining demands for relief depend on claims that fail**

The demands for injunctive and restorative relief against MADDD, FAC Prayer ¶¶ 4–5, depend on a viable substantive right. A punitive-damages demand likewise requires an underlying cause of action; it is not independently actionable. *Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 616–17 (1994). MADDD seeks dismissal of those demands insofar as the substantive claims against it fail. Fees under 42 U.S.C. § 1988 depend on a viable qualifying claim, and the FAC's Fourth and Fifth Causes of Action concern the officers and City. FAC ¶¶ 78–82. Any surviving relief must rest on conduct and a substantive claim properly attributable to MADDD.

**POINT VIII — DISMISSAL AS AGAINST MADDD SHOULD BE WITH PREJUDICE**

Plaintiffs amended after receiving MADDD's first motion identifying the alleged pleading defects. ECF Nos. 18, 24. That history supports scrutiny of any request for further leave, but amendment before a judicial ruling does not automatically forfeit Rule 15's protections. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018), affirmed denial *of further amendment after the district court had identified the precise defects in a prior ruling. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014), affirmed denial where plaintiffs had already amended and identified no additional facts or legal theories they could plead. *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015), preserves denial for futility while rejecting premature forfeiture of leave. MADDD requests denial of further leave where Plaintiffs identify no additional facts capable of curing the specific defects found by the Court.

Leave may be denied where the defect is substantive and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). MADDD requests dismissal with prejudice of claims the Court finds legally incurable. For any curable defect, further leave should require a proffer of specific additional facts, rather than repetition of the FAC's conclusions.

**CONCLUSION**

For these reasons, MADDD respectfully requests that the Court dismiss the First Amended Complaint as against it under Rules 12(b)(1) and 12(b)(6), with prejudice as to all claims dismissed on the merits and grant MADDD such other and further relief as the Court deems just and proper.

In the alternative, MADDD requests an order:

a) dismissing all claims of Plaintiffs Rosenthal, Khan and Ciavolino as against MADDD, and with them the class allegations as against MADDD;

b) dismissing the Sixth Cause of Action as against MADDD;

c) dismissing the Third Cause of Action, with the accounting and restoration-fund demands, as against MADDD;

d) dismissing the Second Cause of Action as against MADDD;

e) dismissing the First Cause of Action as against MADDD, including any theory by which Plaintiffs would enforce MADDD's lease with the City of New York;

f) dismissing the Seventh and Eighth Causes of Action as against MADDD;

g) dismissing as untimely all claims against MADDD to the extent based on events before August 24, 2023;

h) striking the demands for punitive damages and attorney's fees as against MADDD; and

i) denying further leave to amend as against MADDD or, alternatively, limiting it as set out in Point VIII of the Memorandum of Law; and

j) granting MADDD such other and further relief as the Court deems just and proper.

Dated: November 16, 2026
Great Neck, New York

Gary Rosen, Esq.
ROSEN LAW LLC
Attorneys for Defendant MADDD 550 Broad LLC
216 Lakeville Road,
Great Neck, New York 11020
Telephone: (516) 437-3400
Email: grosen@rosenlawllc.com

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum complies with the 8,750-word limit of Local Civil Rule 7.1(c) and Section 5(A) of the Court's Individual Rules and Practices in Civil Cases. It contains 8,781 words, including headings, footnotes and quotations, but excluding the caption, table of contents, table of authorities, signature block, and this certificate, as counted by the word-processing program used to prepare it. All text, including footnotes, is in 12-point font.

Dated: November 16, 2026
Great Neck, New York


__________________________
Gary Rosen, Esq.
ROSEN LAW LLC
Attorneys for Defendant MADDD 550 Broad LLC
216 Lakeville Road,
Great Neck, New York 11020
Telephone: (516) 437-3400
Email: grosen@rosenlawllc.com